## In re SEARCH OF NO. 15 EAST THIRD ST., BOROUGH OF MANHATTAN, NEW YORK CITY.

### In re KUPFERBERG.

(District Court, S. D. New York. March 3, 1922.)

1. **Intoxicating liquors ⊜250—Evidence held to show probable cause for issuance of search warrant.**

   Evidence that wine was being sold and drunk on the premises of one holding a permit to manufacture for sacramental and medicinal purposes is sufficient to establish probable cause and authorize issuance of a search warrant, and under such warrant the stock of liquor and such records as are required to be kept in connection with the business may be seized.

2. **Intoxicating liquors ⊜255—Permit held not ground for return of liquor seized.**

   A permit cannot afford ground for the reclaiming of liquor lawfully seized, where there is evidence that it was intended for use as a beverage in violation of law.

3. **Intoxicating liquors ⊜250—Evidence to establish probable cause for issuance of search warrant.**

   Evidence to show probable cause which will authorize issuance of a liquor search warrant need not all be common-law evidence which would be admissible in court.

In the matter of the application of Joseph Kupferberg for return of property seized under search warrant affecting No. 15 East Third Street, Borough of Manhattan, New York City. Denied.

Griffiths, Sarfaty & Content, of New York City (Raymond H. Sarfaty, of New York City, of counsel), for petitioner and claimant.

William Hayward, U. S. Atty., and Victor House, Asst. U. S. Atty., both of New York City, for the United States.

AUGUSTUS N. HAND, District Judge. Joseph Kupferberg secured a government permit to manufacture wines for sacramental and medicinal purposes at No. 15 East Third street. The business of the concern was entitled "Kupferberg & Braunstein, Producers and Wholesale Dealers in Wines for Sacramental and Medicinal Purposes Exclusively. * * *" Braunstein was the active manager of the place, and told Prohibition Agent Estes that Kupferberg was his partner. He sold a gallon of wine to Estes, and the latter saw 30 or 40 people, appearing to be Italians, Jews, and Irishmen, drinking liquor from the same barrel from which the gallon was taken. There was also a sale of the barrel to Estes. An Italian named Cranoforme came out of the premises carrying a jug, and was arrested for transporting. There was also hearsay evidence offered before the commissioner to

the effect that one Mlaker told Estes that he often, brought friends into drink wine on the premises. Only two records could be found indicating sales of wine to rabbis for sacramental purposes, though Kupferberg testified that such was his business. Kupferberg only mentioned the names of two that he knew.

[1] Volstead Act, tit. 2, § 25 (41 Stat. 315), provides that "it shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating" the act; that a search warrant may issue upon proof of probable cause and such property shall be seized. I think it would defeat the purpose of the act to hold that such general sales of wine for beverage purposes as were shown here, together with most scanty records of sales for sacramental purposes, were no evidence that a violation of the act was intended. The forfeiture provisions of the statute would be quite ineffectual, if nothing could be seized except the particular wine illegally sold. The wines and papers required to be kept under the Prohibition Act and evidential in their nature may all be taken upon a search warrant. Some of the liquor is admitted by counsel for the government not to contain one-half of 1 per cent. of alcohol, and such liquor should be returned accordingly.

The case of Francis Drug Co. v. Potter (D. C.) 275 Fed. 615, is far weaker than the present. There a single sale was held by Judge Morton to be insufficient as the basis for condemning the whole stock of liquor in a drug store, and he ordered the liquor which had been seized returned. In the course of his opinion, he commented upon the fact that the Volstead Act provides that:

"Property so seized shall be subject to such disposition as the court may make thereof."

And he said that this clause was a later enactment than section 16 of title 11 of the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼p), which provides:

."The judge or commissioner shall order the same retained in the custody of the person seizing it, or to be otherwise disposed of according to law."

Judge Morton, by reason of the different language of the section of the Volstead Act than that of the Espionage Act, held that the commissioner who had ordered a return of the liquor had no power to make such an order.

I think it would be going too far to view Judge Morton's decision, which I quite agree with, as holding that section 25 of title 2 of the Volstead Act superseded section 16 of title 11 of the Espionage Act by a provision which required the court in effect to try the ultimate right to dispose of the liquor upon proceedings at the foot (so to speak) of the search warrant. Judge Morton does say (275 Fed. at page 617) that the petition of the owner of the liquor praying for the direction of the court as to the property—

"conforms to the requirements of section 25. It gives the court jurisdiction over the liquor in question. * * * The drug company's possession of the seized liquor was not unlawful. All the facts in relation to the matter are before the court, and it can be disposed of without further proceedings. * * *"

A question which always ought to be cognizable upon the return of a search warrant is the lawfulness of the seizure. The only basis for issuing the warrant under title 11, § 3, of the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼c) is "probable cause." Seizure of property without probable cause is undoubtedly an invasion of personal rights, prohibited by article 4 of the Amendments to the United States Constitution, which provides that:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

All I think that Judge Morton decided was that the seizure in the particular case before him was such an invasion because a single sale, without anything more, was no evidence of a general intent to violate the Act in respect to unsold liquor held by the drug company under a lawful permit to sell. The words, "if it is found that such liquor or property was unlawfully held or possessed, or had been so unlawfully used, the liquor and all property designed for the unlawful manufacture of liquor, shall be destroyed unless the court shall otherwise order," found in section 25, tit. 2, of the Volstead Act, were not inserted to regulate the practice upon the return of a search warrant, but to prescribe the ultimate rights of the parties upon a certain state of facts, namely, unlawful possession, etc., assumed in the statute. In other words, these words set forth the circumstances under which the United States may confiscate the liquor, and not the conditions under which it may be seized and held pending a determination of the rights of the parties after a trial.

It is really unnecessary to determine whether section 16, tit. 11, of the Espionage Act is superseded by section 25, tit. 2, of the Volstead Act, for, even if it is, the court would be obliged as a matter of constitutional law to determine whether there was probable cause for the seizure, if probable cause was challenged by the owner of the liquor, and in the facts presented before Judge Morton there was ample ground for finding that the seizure was without probable cause.

[2] A permit cannot afford an excuse for reclaiming intoxicating liquors where facts are shown indicating that the liquors were intended for use for beverage purposes in violation of law. Reid v. United States (C. C. A.) 276 Fed. 253.

[3] It is argued by claimant that the proof shows that Joseph Kupferberg was the sole owner of the business, alone held the permit, did not authorize illegal sales at his place of business, and knew nothing about what was going on; also that some of the evidence offered by the government before the commissioner was hearsay. I cannot regard it as imperative that the only evidence which will justify the issuance of a search warrant and the seizure of property thereunder be common-law evidence. If that were so, it would be very difficult to sustain the granting of search warrants, or the seizure of property held for the purpose of violating the Volstead Act. If a business assumed to be conducted for the purpose of manufacturing and sell-

ing wine for sacramental and medicinal purposes, instead of being conducted legally, so as to satisfy this exception to the general terms of the Prohibition Act, becomes to a great extent an ordinary liquor business for beverage purposes, it seems to me a question for the trial court in a forfeiture proceeding to determine whether the mere statement of Kupferberg that he alone owned the business, and knew nothing about the violations, should be taken to be true.

The application, except as to liquors not coming within the prohibition of the Volstead Act, is denied.