## In re HOLLYWOOD CABARET.

## In re SILVER SLIPPER CABARET.

(Circuit Court of Appeals, Second Circuit. December 8, 1924. On Reargument, March 2, 1925.)

### Nos. 57, 58.

**1. Intoxicating liquors ⬉249—Warrant may issue for search of liquor unlawfully possessed, though unlawful possession is merely a misdemeanor.**

Under the National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), making possession of liquor unlawful, and providing for issuance of warrant for search of such liquor under Act June 15, 1917, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212i, 10496¼a–10496¼v), warrant could issue for search for unlawfully possessed liquor, though possession is only a misdemeanor.

**2. Intoxicating liquors ⬉248—Affidavits describing comparatively recent sales of whisky on premises used as cabarets with approval of management held to show probable cause.**

Affidavits describing comparatively recent sales of whisky on premises used as cabarets, by or with the approval of the management, held sufficient to show probable cause for issuance of search warrants under National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), and Act June 15, 1917, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212i, 10496¼a–10496¼v).

**3. Searches and seizures ⬉3—Description of places by·giving street number, sufficient.**

Description of places to be searched by giving street number held sufficient.

**4. Intoxicating liquors ⬉249—Warrant for search of place need not describe individual or name owner.**

Warrant issued under Act June 15, 1917, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1923, §§ 10212i, 10496¼a–10496¼v), and National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), for search of a place and not an individual, need not describe any individual or name owner.

**5. Intoxicating liquors ⬉248—Affidavits held not "positive" within statute prohibiting issuance of warrant for search during night unless affidavits are "positive" that property is on person or in place to be searched.**

Affidavits that, "from my observation, I am positive that liquor is kept on the premises for sale at night," and that, "from my observations and purchases therein (previously alleged to have been made three weeks before affidavit was made), I am positive that liquor is possessed on said premises," held not sufficient under Act June 15, 1917,·tit. 11, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼j), prohibiting warrant for search at night, unless affidavits are "positive" that property is on person to be searched or in place to be searched.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Positive.]

Rogers, Circuit Judge, dissenting.

### On Reargument.

**6. Intoxicating liquors ⬉253—Liquor seized under improperly issued warrant will not be ordered returned, where record does not disclose persons entitled thereto.**

Where record did not disclose persons from whom intoxicating liquor was taken under warrant improperly issued, nor persons in possession of premises when liquor was seized, but contained mere allegation that certain parties "owned" premises, without showing that they owned liquor, or even that they were in possession of premises, liquor will not be ordered returned under National Prohibition Act, tit. 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m), and Act June 15, 1917, tit. 11, § 16 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼p).

In Error to the District Court of the United States for the Southern District of New York.

In the matter of the application for a search warrant affecting premises known as the Hollywood Cabaret, and in the matter of the application for a search warrant affecting premises known as the Silver Slipper Cabaret. Motions by George Hammond and others in the first proceeding, and by the Silver Slipper Corporation and others in the second proceeding, to vacate search warrants and for return of property seized thereunder, were denied, and movants bring error. Reversed and remanded.

These appeals are from orders denying

motions made by the respective plaintiffs in error to vacate search warrants and to direct the return of the property seized thereunder.

In the first case an employee of the Treasury Department who, on February 21, 1924, made the affidavit upon which the search warrant was issued, swore that on January 30, 1924, about midnight, he entered the Hollywood Cabaret and was introduced to a man in charge named Bernstein, who called the waiter and told him to give the affiant anything he wanted; that the affiant ordered and paid for Scotch whisky and drank some of it and saw a great many people drinking whisky in the cabaret and various scenes of partial intoxication. The affiant also swore that:

"This cabaret is open only at night. From observations and purchases therein I am positive that liquor is possessed on said premises."

The search warrant in the Hollywood case issued on February 24th, three weeks and one-half after the affiant visited the cabaret.

In the second case, an employee of the Treasury Department who, on February 18, 1924, made the affidavit upon which the search warrant was issued, swore that he entered the Silver Slipper Cabaret (without mentioning the date), asked for a pint bottle of whisky, which he paid for, and was served with several bottles of beer and drinks of whisky. He also said:

"My information is that other government officers have made purchases of whisky in said cabaret within the past two weeks. This place is open for business only at night and it is impossible to obtain admission in the daytime. From my observation I am positive that liquor is kept on the premises for sale at night."

The search warrant in the Silver Slipper case was issued on February 25, 1924. It nowhere appears when the employee of the Treasury Department visited the premises and saw the occurrences which he described.

M. Michael Edelstein, of New York City, for plaintiffs in error.

William Hayward, U. S. Atty., of New York City (Elmer H. Lemon, Sp. Asst. U. S. Atty., of Middletown, N. Y., of counsel), for the United States.

Before ROGERS, Circuit Judge, and LEARNED HAND and AUGUSTUS N. HAND, District Judges.

AUGUSTUS N. HAND, District Judge (after stating the facts as above). [1] The search warrants are first attacked on the ground that the possession of liquor in violation of the National Prohibition Act is only a misdemeanor punishable by a fine of not more than $500, and that a search warrant cannot issue in cases other than felonies. We find no sound basis for such a contention. Section 25, tit. 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½m) provides that:

"It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property.

"A search warrant may issue as provided in title XI of public law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may make thereof."

The law approved June 15, 1917, was the so-called Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212i, 10496¼a–10496¼v).

The fact that the state of New York passed a special act to cover searches and seizures in cases under the Mullan-Gage Law, whether or not because the Legislature regarded the general search warrant statute of New York as limited to felonies, cannot determine the application of the Espionage Act.

Where section 25, tit. 2, of the National Prohibition Act declares it to be unlawful to possess any liquor "intended for use in violating this title or which has been so used," and thereafter allows the issuance of search warrants "as provided" in the Espionage Act, there appears to be a clear inclusion of all liquors possessed in violation of law within the search warrant provisions. United States v. Friedman (D. C.) 267 F. 856.

[2-4] The plaintiffs in error further contend that the warrants were issued without probable cause and do not sufficiently describe the persons, property, and premises to be searched. Probable cause would seem to be sufficiently shown when the affidavits described comparatively recent sales of whisky upon premises used as cabarets by, or with the approval of, the management itself. In re Search of No. 15 East Third Street (D. C.) 284 F. 914. There was plainly a sufficient description of the places to be searched by giving the street number. As no person was to be searched, no description of any individual was necessary. Where the place

is to be searched the statute does not call for the name of the owner. Petition of Barber (D. C.) 281 F. 550; Gandreau v. United States (C. C. A.) 300 F. 21.

[5] The most serious objection to the validity of the search warrant is that it was to be executed at night and insufficient facts were shown in the moving papers to justify any positive allegations of knowledge.

The Espionage Act provides, in section 10, tit. 11 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼j), that:

"The judge or commissioner must insert a direction in the warrant that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night."

In the Hollywood case the positive allegations are based upon the statement that "from my observations and purchases therein I am positive that liquor is possessed on said premises," and in the Silver Slipper case upon the statement that "from my observation I am positive that liquor is kept on the premises for sale at night." In neither case does any basis appear for the word "positive" except purchases made in the first case over three weeks before, and in the second case at an indefinite time before. To sustain the search warrant it is necessary to hold that sales made three weeks or an indefinite time before the making of the affidavit amount to positive information of the presence of liquor at the time the affiant takes oath, or else that the requirement that the affidavits be "positive" is a matter left entirely to the conscience of the affiant. Whichever view be taken, the adoption of it involves the conclusion that there is no difference between the requirement of section 3, tit. 11, of the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼c), that "a search warrant cannot be issued but upon probable cause," and the requirement of section 10, tit. 11 (section 10496¼j), that "the judge or commissioner must insert a direction in the warrant that it be served in the daytime unless the affidavits are positive that the property is on the person or in the place to be searched."

If such a short time had elapsed between the purchase of liquor upon the premises and the making of the affidavit and issue of the search warrant that it was quite certain that the liquor seen or tasted was from the same stock that would still naturally be upon the premises, it is unnecesary for us to determine that the averment of positive knowledge might not be sufficient for a night search warrant. We do not pass upon such a situation as that. But where a number of weeks or an indefinite time has elapsed between the inspection of the premises and the making of the affidavit, there can be no positive knowledge unless the word "positive" is indistinguishable from "probable."

In Gandreau v. United States, supra, though the warrant provided that it might be executed during the day or night, it was executed only in the daytime. Moreover, only two days elapsed in that case between the time when the officer visited the premises and the day when the warrant issued. That decision is, therefore, not in point.

Judge Tuttle's decision in United States v. Edwards (D. C.) 296 F. 512, may also be distinguished from the present case. There the affidavit of the prohibition agent after reciting purchases of intoxicating liquor on February 1, 1923, went on to say: "Deponent further states, upon his own knowledge, that in and upon the premises aforesaid * * * occupied as a soft drink stand and cigar store, and used for the illegal sale of intoxicating liquors, * * * and particularly at the bar of the building aforesaid, * * * is now a certain quantity of intoxicating liquor fit for beverage purposes, * * * used in connection with the aforesaid violation of the National Prohibition Act; said intoxicating liquor consisting of whisky and certain other intoxicating liquors." The affidavit was made on February 2, 1923, and the search warrant issued the same day. Not only did the smallest amount of time intervene between the visit to the premises, the making of the affidavit, and the issuance of the search warrant, but there was also a positive averment by the prohibition agent that intoxicating liquor was upon the premises "to his own knowledge." If such a night search warrant could not be sustained, it is hardly possible to conceive of a case where a valid one could be allowed.

The orders of the District Court are each reversed, and the proceedings are remanded, with directons to quash the warrants and restore the property seized under section 16, tit. 11, of the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼p).

ROGERS, Circuit Judge (dissenting). I concur in so much of the above opinion as relates to the right to issue a search warrant in cases arising under the Prohibition Act notwithstanding the violation of the act is only

a misdemeanor and not a felony. I also concur in holding that the search warrants sufficiently described the persons, property, and premises to be searched. But I dissent from so much of the opinion as holds that the moving papers were insufficient to justify the issuance of a warrant to search the premises at night and will proceed to state my views upon that question.

The Eighteenth Amendment prohibits the sale of intoxicating liquors within the United States and authorizes the Congress by appropriate legislation to enforce it. The National Prohibition Act was passed for the purpose of making prohibition effective. And section 3, tit. 2 of that act (Comp. St. Ann. Supp. 1923, § 10138½aa), provides that the act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented. It is no doubt true that penal acts are construed strictly by the courts. It has been said that this rule is almost as old as construction itself. It is not necessary to inquire whether the above provision of the statute was beyond the constitutional power of the Congress to enact. Rose v. United States (C. C. A.) 274 F. 245, 250. It certainly is a cardinal rule of construction applicable to penal as to all other statutes that the true intent of the lawmaking body is to be ascertained and made effective if possible, and the rule of strict construction is not applied with such technicality as to defeat the intent of the statute if legal. As was said in United States v. Hartwell, 6 Wall. (73 U. S.) 385, 396 (18 L. Ed. 830) : "The words must not be narrowed to the exclusion of what the Legislature intended to embrace. * * * It must not be defeated by a forced and overstrict construction. The rule does not exclude the application of common sense to the terms made use of in the act in order to avoid an absurdity, which the Legislature ought not to be presumed to have intended." See Bolles v. Outing Co., 175 U. S. 262, 265, 20 S. Ct. 94, 44 L. Ed. 156.

And it has been held that statutes which are both penal and remedial are to be construed strictly so far as they inflict punishment upon offenders, but that in their remedial features they are to be construed liberally throughout.

At any rate, the statute should be given a reasonable and common sense construction, and considered and interpreted in the light of the evils aimed at and the purposes clearly intended by the Congress in its enactment. United States v. Edwards (D. C.) 296 F. 512, 515. The maxim, "Ut res magis valeat quam pereat," is to be kept in mind, and the statute, if reasonably possible, is to be so construed as to give force and effect to its provisions. They should receive a construction which will advance the object which the law was intended to promote, which was the prevention of the unlawful sale of intoxicating liquors. The Eighteenth Amendment and the National Prohibition Act are a part of the law of the United States. As such this court has no concern with the wisdom or unwisdom of the law. But it is the duty of the court to give effect to it and to that end give such reasonable consruction to the provisions of the law as will promote and not hinder its administration.

Under the act of Congress the search warrant must contain a direction that it be served in the daytime unless the affidavit upon which it is obtained is positive that the property is on the person or in the place to be searched, in which case it may contain a direction to enter, to search, and to seize in the day or night.

The search warrant which was issued commanded the person to whom it was issued "in the day or night time" to enter and make the search.

After the search warrant was executed and a return made thereon, a motion was made in due course to vacate the warrant, and after a hearing regularly had, the motion was in all respects denied by Judge Knox in the District Court on March 21, 1924. On the same day a writ of error was sued out.

It was assigned for error that a search warrant could not issue under the laws of the United States in a case of misdemeanor.

Also, that the search warrant did not attempt to describe the person and the property to be searched.

Also, that the search warrant at night time was illegally issued because the affidavit filed to obtain it did not contain any allegation of fact that the affiant was positive that the goods to be seized were on the premises.

Also, that no probable cause appeared in the affidavit filed for the warrant.

Also, that by reason of the length of time elapsing between the alleged violation constituting the alleged probable cause and the date upon which the affidavit was made for the search warrant herein, the search and seizure was illegal and void.

To justify the issuance of a warrant directing a search at night, the affidavit must be "positive" in its allegations that the property to be seized is in the place to be searched. The Standard Dictionary defines a "positive allegation" as follows: "In law an allegation made without reserve as dis-

tinguished from an allegation made on information and belief or argumentatively." That is exactly what the affidavit in this case did state.

But the allegation was as to the condition existing on January 30th, and it is said that a condition shown to exist on that day does not warrant the issuance of a search warrant on February 24th. In fact, that it must appear that the property to be seized was actually on the premises at the time the warrant issued. The answer to that is that the statute nowhere says any such thing. And no case has been decided which lays down any such proposition.

The National Prohibition Act, being the Act of October 28, 1919, tit. 2, § 25, provides as follows:

"It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property. A search warrant may issue as provided in title XI of public law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may make thereof. If it is found that such liquor or property was so unlawfully held or possessed, or had been so unlawfully used, the liquor, and all property designed for the unlawful manufacture of liquor, shall be destroyed, unless the court shall otherwise order. No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as a store, shop, saloon, restaurant, hotel, or boarding house. The term 'private dwelling' shall be construed to include the room or rooms used and occupied not transiently but solely as a residence in an apartment house, hotel, or boarding house. The property seized on any such warrant shall not be taken from the officer seizing the same on any writ of replevin or other like process." 41 Stat. pt. 1, p. 315 (Comp. St. Ann. Supp. 1923, § 10138½m).

And title 11 of the Espionage Act of June 15, 1917, § 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼c), provides:

"A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person and particularly describing the property and the place to be searched."

And section 5 (section 10496¼e) provides:

"The affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist."

And section 10 (section 10496¼j) provides:

"The judge or commissioner must insert a direction in the warrant that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night."

And section 11 (section 10496¼k) provides:

"A search warrant must be executed and returned to the judge or commissioner who issued it within ten days after its date; after the expiration of this time the warrant, unless executed, is void."

The search warrant which was issued recited as follows:

"Whereas, it appears from the affidavit of Frank Rickey, that certain intoxicating liquor containing more than ½ of 1 per cent. of alcohol by volume and fit for use for beverage purposes is unlawfully held and possessed in a certain cabaret known as Hollywood Cabaret, located in the basement of the building at 203 West Forty-Ninth street, borough of Manhattan, city and Southern District of New York, and in any closet, vault, safe, cellar, subcellar, kitchen, ice box, room or rooms connected with or used in connection with said restaurant.

"And that said liquor is used and is intended for use and has been used in violating title 2 of the National Prohibition Act in that said liquor was and is willfully, knowingly and unlawfully held in said premises."

The search of the premises was made on the night it was issued, and liquor was found on the premises and was seized. The return to the search reads as follows:

"Search warrant executed at 2:15 a. m. Feb. 24, 1924, at 203 West Forty-Ninth street, found the following liquor in pint in pitcher in kitchen, 4 oz. of Scotch in glass in kitchen and 6 oz. on table in (3) glasses on table near kitchen door."

It thus appears that the affidavit stated that the person who made it based his statements on what he saw in a cabaret at about midnight on January 30, 1924, or about three weeks prior to the application for the search warrant. Why this delay occurred is not explained. The affidavit, however, is positive in its allegations. The person who made

it swears that he entered the premises; that he there ordered Scotch whisky and was furnished it; that he was familiar with the taste of whisky and knew that what he was furnished was whisky. And he stated further that a great many people were in the cabaret at the time drinking whisky and that there were various scenes of partial intoxication. And then he added: *"From my observations and purchases therein I am positive that liquor is possessed on said premises."*

These allegations were sufficient to have justified the issuance of a search warrant if application therefor had been made at once or within a few days thereafter.

In Gandreau v. United States (C. C. A.) 300 F. 21, the warrant was applied for on July 20, 1923. The affidavit on which the warrant issued stated that the liquor to be seized was on the premises two days before the application for the warrant was made; that the place was a saloon where liquor was then being kept and sold. This was held sufficient by the Circuit Court of Appeals for the First Circuit. But if the affidavit was sufficient to justify the issuance of the warrant, if applied for within two or three days, it must be because there is a presumption that the condition which existed two days before continued unchanged at the time the warrant was sued out. How long does that presumption continue? If it continues for two or three days, the circumstances may be of such a character as makes it not unreasonable to say that it continues for a reasonable time thereafter.

There are certain rebuttable presumptions of fact in which the law indulges. In other words, it is a rule of law that from certain facts proven by direct evidence certain inferences are to be considered as prima facie established. Now it is a well-settled rule that where the existence at one time of a certain condition or state of things of a continuing nature is shown, the presumption arises that such condition or state continues so long as is usual with conditions or things of the particular nature. An illustration relates to the possession of property either real or personal. If it be shown that a person had certain property in his possession at a certain time not too remote, it would afford some degree of presumption, there being no evidence to the contrary, that it continued in his possession. Robson v. Rawlings, 79 Ga. 354, 7 S. E. 212. And where a person is shown to be a stockholder in a corporation at a particular time, it is presumed that the relation continued to exist. Montgomery,

etc., Plank Road Co. v. Webb, 27 Ala. 618. And where it is shown that the relation of a man and woman cohabiting was in its origin meretricious, the presumption is that it continued to be of such a character. Thus in Smith v. Smith, 4 Paige (N. Y.) 432, 437 (27 Am. Dec. 75), the Chancellor said:

"And certainly, if courts of justice are to draw the same conclusions which everybody else would draw from the same facts, when it is once established that an adulterous intercourse has commenced between parties, and they are found living together, under circumstances which would induce every unprejudiced mind to conclude their inclinations had not changed, the fair presumption is that the illicit intercourse is still continued."

To hold that it must positively appear that the liquor is on the premises at the time the warrant issues is to give to the statute a narrow and restricted construction which would make it valueless so far as "night" searches are concerned, and that in entire disregard of the express language of the statute that it is to be liberally construed to accomplish its purpose. The construction which we are asked to give to the statute is not one which will accomplish the purpose of the statute, but will defeat it.

If the affidavit shows by positive allegations that intoxicating liquor was at a certain time on the premises to be searched, and that the premises are used as a public restaurant in which food and liquor are sold and in which people are found who are in an intoxicated condition, the allegations in my opinion are sufficiently positive to meet the requirements of the statute. When these facts are shown, the legal presumption is that the condition shown to exist continues for a reasonable time thereafter; nothing to the contrary appearing. What is a reasonable time in such cases is a question of law for the court depending upon all the circumstances of the particular case. Quam longum debet esse rationabile tempus non definitur in lege, sed pendet ex discretione justiciariorum. Co. Litt. 50.

I am unable to see any reason for holding that the affidavit, upon which the search warrant in this case was issued, was not sufficiently positive in its allegations, or facts alleged to exist were so remote in time as not to justify the issuance of the warrant. The allegations contained in it made out probable cause. It described the person and the place: "The Hollywood Cabaret located in the basement of the building at 203 West Forty-Ninth street, borough of Manhattan,

city and Southern District of New York." The affiant added: "I was introduced to the man in charge of the cabaret, whose name is Leo Bernstein."

But as the warrant directed that the search might be made at any time of the day or night, it was necessary that the affidavit should be positive that "the property is on the person or in the place to be searched." The affiant in his affidavit stated that "from my observations and purchases therein I am positive that liquor is possessed on said premises." That affidavit was made on February 21, 1924, and the warrant issued three days later. It is true that the facts upon which the officer seems to have based his positive allegation that "liquor is possessed on said premises" were the facts he sets forth as having been discovered by him on January 30th:

. "Leo Bernstein (the man in charge of the cabaret) called the waiter and told him to give us anything we wanted. * * * We ordered from the waiter drinks of Scotch whisky. * * * While drinking the Scotch whisky, Bernstein came to our table and asked us if everything was all right and we were all taken care of. He told us that we could have anything we wanted and later brought a girl to me and insisted that I dance with her. She claimed to be the 'hostess' in the cabaret and ordered drinks of Scotch whisky for which we were compelled to pay $1.50 a drink. I drank some of the whisky, and as I am familiar with the taste of whisky I know that it was whisky."

Under the circumstances of this case, it was not, in my opinion, unreasonable to conclude that the condition of things shown by positive testimony to exist on January 30, 1924, in the Hollywood Cabaret, continued to exist for a reasonable time thereafter, and that the time which actually elapsed before the warrant in this case was issued was not so unreasonable a time under the circumstances shown as destroyed the presumption and invalidated the warrant.

The fact that when the search authorized by the warrant was made the officer found liquor on the premises as alleged and took it into his possession shows that the presumption was not unfounded in fact.

The opinion of the majority rests on the asserted difference in meaning of the words "positive" and "probable." Under the Fourth Amendment of the Constitution, no warrant can issue but upon probable cause, and under the Prohibition Act no warrant can direct a search to be made at night unless, as before stated, the affidavit upon which

5 F.(2d)—42

it is obtained is positive that the property is in the place to be searched.

"Probable" is defined in the New Standard Dictionary as: "Being so supported by evidence as to incline the mind to belief rather than to disbelief, yet leaving room for doubt; having more than half the chances favorable; apparently true, yet possibly false; likely." And in defining "probable cause" in criminal law, the same authority defines it as "a state of facts to warrant a man of ordinary caution in believing that the accused had committed the crime charged."

The same authority defines "positive" as "not admitting of doubt or denial; incontestable; undeniable; certain; sure; as, proof positive." And Bouvier's Law Dictionary defines "positive" as "express; absolute; not doubtful."

To say that something that existed at midnight of January 1st, because the affiant saw it, existed at 2 o'clock on the same night, although the affiant had not seen it in the meantime, is not "absolute" and "certain" proof of its existence at the latter hour. But the circumstances nevertheless may be of such a nature that the affiant is absolutely certain that the thing still exists. A. meets B. on the street and talks with him and sees that he is apparently well. If two hours later A. makes an affidavit to the fact that B. is alive, the affidavit is positive in character although the affiant cannot be indubitably certain that B. is still alive. He cannot be certain of the fact in the same way that he is certain that two and two make four. And the statute does not require that kind of certainty. To say about anything human and transitory that something which existed an hour ago, because one saw it then, is now although the party asserting it has not since seen it, is a mode of assertion impossible about anything human. And when the statute relating to search warrants requires positive knowledge of the existence of certain facts, it certainly cannot mean an absolute knowledge and certainty which is unattainable. To hold otherwise is to give to the statute an unreasonable construction.

And if A. enters the department store of John Wanamaker's or of Macy's and finds them selling books on December 1st, he would be justified in making an affidavit two or three weeks later that both of those stores then had books on their premises. In the same way, if A. enters a night resort and there buys liquor and finds there persons who show plainly that they are under the influence of liquor, and the appearances all indicate that it is the business of that place to

dispense liquor just as it is of Wanamaker's or Macy's to sell books, he is justified in being positive three weeks later that liquor is on the premises.

I think the order should be affirmed.

## On Reargument.

ROGERS, Circuit Judge. [6] After the opinions were filed in the above cases an application for a reargument was made and granted. The reargument was allowed upon a single point. The decision of the majority of the court reversed the case, and in remanding it to the court below it was with directions "to quash the warrants and restore the property seized under section 16 of the Espionage Act." It is usual in cases of this nature, when property has been unlawfully seized under a void search warrant, to order it to be restored. And the question whether the property should be ordered restored was not considered at the argument in this court, which was confined to the legality of the seizure and the validity of the warrant. On the filing of the decision the United States asked a reargument upon the question whether the liquors should have been ordered restored. A reargument having been allowed, and counsel having been heard upon the question of the restoration of the liquors, we shall proceed now to dispose of the question.

In case No. 57 the transcript contains the amended notice of motion made in the District Court. It stated that a motion would be made in that court on the 18th day of March, 1924, at 10:30 o'clock in the forenoon of that day, or as soon thereafter as counsel could be heard, for an order to return the property seized under the search warrant, and to vacate and set aside the warrant and the seizure thereunder, for the reasons stated therein. The notice was signed by an attorney for the plaintiffs in error. The notice, after being properly entitled, began: "Please take notice that George Hammond and Leo Bernstein, the owners of the premises above described" (Hollywood Cabaret), would move the court for an order to return the property seized under the search warrant and to vacate and set aside the search and seizure thereunder. It contains no allegation that the alleged owners of the premises were in possession of the premises at the time of the search and seizure, or that they were the owners of the liquors which were seized.

There is nothing to show what means of information the attorney has as to the ownership of the premises, and no information as to why there is no affidavit from any one who claims ownership or right of possession. The only sworn statement from any one on any subject, which the transcript contains, is the affidavit of an employee of the Treasury Department, and which was made by him in applying for a search warrant; and that affidavit does not disclose either who owned or was in possession of the premises, which were searched, or who owned or was in possession of the liquors, which were seized. It does contain a statement concerning a visit which the employee had made to the cabaret and what he himself did there. He stated in his affidavit that while he was in the place he was introduced to the man "in charge of the cabaret, whose name is Leo Bernstein." He adds that Bernstein called a waiter "and told him to give us anything we wanted." This is not evidence that Bernstein either owned the cabaret or was in the possession of it. He may have been no more than a head waiter in charge of the other waiters. If a court is going to return property which has been unlawfully seized, it should be restored to the one from whose possession it was unlawfully taken, or to one who claims it as owner. There is no sworn testimony in this case which shows that these liquors were taken from the possession of any of the parties to the suit, or that any one of them claims them as owner.

In case No. 58 the notice of the motion to be made in the District Court, which was also signed by the attorney for the defendants, there being five such defendants, simply states that "the owners of the premises above described" will move for an order to return the property seized under said search warrant, and to vacate and set aside the search and seizure. There is no allegation whatever as to who the owners of the liquors are, or as to who owned or had possession of the premises at the time when the place was searched and the liquors were taken.

The only sworn statement in case No. 58 is the affidavit made in the application for the search warrant. That affidavit differs materially from the one already discussed in case No. 57. It contains no reference to any one of the parties who allege themselves to be the plaintiffs in error herein. The officer states that having entered, "and after being O. K.'d by the head waiter, Charles Erickson, I was turned over to a waiter whom Erickson told to take care of me." He then goes on to tell what he did and what he saw. There is absolutely not a scintilla of proof, or even an unsworn specific allega-

tion, as to who owned or had possession of the premises entered and searched, or the liquor that was seized. The National Prohibition Act (41 Stat. 305) provides that "a search warrant *may issue* as provided in title XI of public law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may make." Title 2, § 25 (Comp. St. Ann. Supp. 1923, § 10138½m):

The act approved June 15, 1917 (40 Stat. 228) is the act known as the Espionage Law. And section 16 of title 11 of that act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼p) reads as follows: "If it appears that the property or paper taken is not the same as that described in the warrant or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the judge or commissioner must cause it to be restored to the person from whom it was taken; but if it appears that the property or paper taken is the same as that described in the warrant and that there is probable cause for believing the existence of the grounds on which the warrant was issued, then the judge or commissioner shall order the same retained in the custody of the person seizing it or to be otherwise disposed of according to law."

It is claimed that the provision above cited from the National Prohibition Act, declaring that a search warrant *may issue* as provided in the Espionage Act, makes the ultimate disposition of liquor, if improperly seized, subject to section 16 of the latter act. Assuming, for the purposes of the argument, that that claim is well founded, but not now deciding that it is well founded, it is sufficient to call attention to the fact that under section 16, if the warrant was improperly issued, the liquor is to be "restored to the person from whom it was taken."

But the difficulty is that neither in case 57 nor in case No. 58 does the transcript of record disclose the person from whom the liquor was taken. There is no sworn statement from any one that the liquor was taken from his possession. There is no sworn statement showing who was in possession of the premises at the time the seizure was made. An unsworn statement in the course of the proceedings in case No. 57 that certain parties "owned" the premises upon which a part of the liquor was seized affords no evidence that they owned the liquor which was found thereon, or even that they were in possession of the premises at the time of the seizure.

Upon such a state of facts we are satisfied that the inadvertent order contained in the opinion originally filed should be modified, by striking from the direction given to the court below the words "and restore the property seized under section 16 of the Espionage Act." The liquor can only be restored, if it is to be restored, to one who at least claims to be the owner, or to have had it in his possession when it was wrongfully seized.

And it is so ordered.