## UNITED STATES v. FITZMAURICE.

### No. 49.

Circuit Court of Appeals, Second Circuit.

Oct. 20, 1930.

Samuel M. Silver, of New Haven, Conn., for appellant.

John Buckley, U. S. Atty., and John A. Danaher, Asst. U. S. Atty., both of Hartford, Conn., for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The only question raised upon the appeal is as to the competency of certain evidence admitted in favor of the prosecution upon the trial of an information for maintaining a nuisance. This consisted of beer, seized on December 13, 1929, in execution of a search warrant issued on December fourth. The affidavit on which the warrant issued declared that the affiant, a prohibition agent, had entered a saloon on November twenty-fourth, and there saw guests ordering, drinking, and paying for, whisky which was being openly sold. The description of the premises in the warrant was as follows: A club "known as the Theatrical Mechanics Union, or the Theatrical Managers Association and being located on the first and second floors of a two story brick building, and being located at 103 Temple Street, New Haven, Connecticut; the entrance to said club room being reached by going through the passageway adjacent to 97 Temple Street, entering a courtyard in the rear of said '97' and then ascending four or five iron stairs."

The first ground of appeal is that the affidavit did not show reasonable ground for the search, and comes down to whether a delay of nineteen days after the visit of November twenty-fourth was too long; that is, whether the earlier sales of whisky gave reasonable ground for supposing that there was still whisky to be seized at the time of the raid. We agree that the whisky originally on hand had probably been drunk; if the property to be seized, which the warrant is to "specify" (sections 616, 626, title 18, U. S. Code [18 USCA §§ 616, 626]), must be the identical liquor possessed at the time of the search, the entry was unlawful. We all know, however, that purveyors of liquor replenish their stocks, and it was a fair inference that whoever was maintaining this saloon, would do the same, and that there would be whisky on the premises on December thirteenth, as there had been on November twenty-fourth, though not the same. Hawker v. Queck, 1 F.(2d) 77 (C. C. A. 3); U. S. v. McKay (D. C.) 2 F.(2d) 257; U. S. v. Callahan (D. C.) 17 F.(2d) 937, 939. Nor does it matter, as far as the right of entry is concerned, that in fact none was found, but only beer. The search must be judged by the situation as disclosed before it is made, not by what turns out to be the truth; just as the event cannot support the search, so

it cannot invalidate it. We are not disposed to press too literally the requirement of the Search Warrant Act that the "specification" shall limit the search. Granted a stock of liquor regularly depleted and refilled, we may impute to the stock as a whole enough unity to satisfy the purpose at stake, as in many situations the law imputes unity to a stock of grain in an elevator. That purpose was to prevent rummaging at large through the place to be entered, a practice which fell within the odium of general warrants. It would extend the protection beyond the abuse to demand literal identity of the actual liquids in such a stock. So we understand Steele v. U. S., No. 1, 267 U. S. 498, 504, 45 S. Ct. 414, 69 L. Ed. 757, where the cases of whisky seized were not shown to be the same as those which the warrant described. Elrod v. Moss, 278 F. 123 (C. C. A. 4).

Our decision in Re Hollywood Cabaret, 5 F.(2d) 651, is not to the contrary. There we held that a search at night could not stand upon evidence of the existence of a stock of liquor three weeks earlier. We did not say, had the evidence of replenishment been "positive," that the substituted liquor could not be seized. Conceivably the way the business was carried on might have proved just that. We did say that such a conclusion, as the facts there were, was not certain enough to come up to the statutory standard; it does not follow that one could not fairly make the inference. Surely one might. No doubt the difference is one of degree, but to say as much, is to say no more than that it is the sort of question more common than any other in the law.

■ As to the description of the place the objection is more plausible. The evidence showed that along Temple street there was a row of shops, running from numbers ninety-seven to one hundred and three. The building searched was not in this row, but in a courtyard, back of number one hundred and three; to reach it one must go through an alley beside number ninety-seven, and so get access to the yard on which it faced. To its door an iron flight of four or five steps led up. Thus, the warrant was wrong in so far as it described the building as "at 103 Temple Street," unless "at" might include a building which had no number, or another in the rear of number one hundred and three; such a construction seems to us too free. In all other respects the description was, however, correct. If one followed the warrant one must reach the proper building, about whose identity there could be no doubt, ex-

cept by an over-scrupulous regard to the letter. Since the description of the premises need only define the search with practical accuracy, the error seems to us negligible; the warrant told the officers where to go and what to enter. Moreover, as the search was to be of the premises, and not of a person, it was not necessary that the owner should be "specified." Gandreau v. U. S., 300 F. 21 (C. C. A. 1); In re Hollywood Cabaret, 5 F.(2d) 651 (C. C. A. 2).

■ It is doubtful whether the record raises the next point argued, but we shall decide it notwithstanding. The warrant authorized a search by night as well as day, relying upon a clause in the affidavit alleging that the affiant was "positive" that there was liquor on the premises; but the record does not show when the search took place. It is true that there was a light burning in front of the door, and this may well have been because the sun had set. Again, it may not. We know nothing of the courtyard, or of the weather. For all that appears it may have been overcast, and the court small and dark. The search being valid, if made during the day, the defendant had to show that it was made at night; so far, we hold that the burden rested upon him. We have already decided that a search by day was regular, though the warrant erroneously authorized a search by night. U. S. v. Lepper (D. C.) 288 F. 136, affirmed (C. C. A.) 295 F. 1017. See, also, U. S. v. Callahan (D. C.) 17 F.(2d) 937, 940.

The most difficult question which the case raises has not been urged upon us, and we mention it only against the chance that we may be thought to have passed upon it. The warrant authorized only the seizure of whisky, and of any property used in its manufacture, perhaps a questionable addition. However that may be, no whisky was found, as we have said, and in any event the officers seized only beer. Two questions thus arise: First, whether, the beer not being "specified," the warrant justified its seizure. Marron v. U. S., 275 U. S. 192, 196, 198, 48 S. Ct. 74, 72 L. Ed. 231; Honeycutt v. U. S., 277 F. 939 (C. C. A. 4); sections 616, 626, title 18, U. S. Code (18 USCA §§ 616, 626). Second, if it did not, whether, when the defendant was arrested after the entry, a second and independent power to search arose which extended to the whole premises and included the beer. As to the last, the record is bare of any evidence showing whether or not on their forcible entry the officers again found the premises being used as a saloon. Re-

gardless of this, having got lawfully into the building, they may have been justified in arresting the defendant for the felony which they had seen him commit on November twenty-fourth, when he was selling beer and whisky to his guests. That arrest in turn might justify a general search and seizure of whatever they found. As to all these questions we say nothing, for the appellant has raised none of them, either in his brief, by his assignments of error, at the trial, or upon the motions to quash the warrant. The record states that a hearing was had on the motion to quash the writ and it does not appear that we have all the evidence then taken. This might have included such proof. If it did not, had the point been taken at the trial, the prosecution might then have supplied what was missing. We can see nothing to justify a reversal as the case stands.

Judgment affirmed.