Grace **WILLIAMS** and Sarah Stokes, Appellants,

v.

**DISTRICT OF COLUMBIA, Appellee.**

Grace **WILLIAMS**, Appellant,

v.

**DISTRICT OF COLUMBIA, Appellee.**

Sarah S. **STOKES**, Appellant,

v.

**DISTRICT OF COLUMBIA, Appellee.**

Nos. 2676–2678.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 16, 1961.

Decided Feb. 24, 1961.

894

Curtis P. Mitchell, Washington, D. C., for appellants.

Ted D. Kuemmerling, Asst. Corp. Counsel, Washington, D. C., with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee. H. Thomas Sisk, Asst. Corp. Counsel, Washington, D. C., also entered an appearance for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code § 11-776(b).

CAYTON, Acting Judge.

Defendants were charged with keeping for sale and selling alcoholic beverages without a license. Code 1951, § 25–109(a) (Supp. VIII). Trial resulted in their conviction and they appeal.

The Government started its investigation at 1:30 on the morning of June 21, 1959, when a plain-clothes policeman and policewoman of the Metropolitan Police Department were admitted and served alcoholic beverages in an "after-hours" club located in the basement of a private home. At trial the policewoman testified that while there they were served several drinks; that she recognized hers as Scotch whiskey, that she saw money passed from the policeman to defendant Stokes in payment therefor; that there were between fifteen and twenty other people in the place during their stay; and that there was a bar in a corner of the room and a commercial juke box for dancing.

On June 25 the police department applied for a search warrant on the strength of the policeman's affidavit. That affidavit recited facts similar to the policewoman's trial testimony to justify issuance of the warrant, and concluded that the affiant was "positive" that other alcoholic beverages were concealed for sale on the premises. The affidavit also stated no license had been issued for sale of alcoholic beverages at those premises.

On June 28 the undercover couple again returned to the premises at 1:30 in the morning in the guise of patrons, ordered drinks and paid for them with marked money. According to a prearranged plan a police raid then took place and the search warrant was executed. An inventory was made of liquor and beer then seized, and defendants were taken to the station and booked. Later, a copy of the warrant and inventory was given to defendant Williams, operator of the club.

The errors assigned are the denial of defendants' motion to suppress, and the failure of the court to grant an acquittal on the basis of claimed weakness in the Government's case.

Code 1951, § 25–129(h) (Supp. VIII) provides that warrants issued for the search of illegal alcoholic beverages must provide for their execution in the daytime unless affiant is positive the goods are in the place to be searched, in which event the warrant may be issued for execution in the daytime or at night. Defendants contend the officer could not have been positive four days after his initial visit that the liquor present in the premises on June 21 was also there when the affidavit was signed and the warrant issued. They argue if that were so, the probability that some alcoholic beverages were there would not support the issuance of the warrant for execution at night, and the warrant here in issue would be invalid.

Defendants rely on cases where ten days or more intervened between the illicit act and the issuance of a warrant. Those warrants were held invalid because if "an indefinite time has elapsed between the inspection of the premises and the

making of the affidavit, there can be no positive knowledge unless the word 'positive' is indistinguishable from 'probable.'"[1] The lapse in the case just quoted from was over three weeks. Clearly a different situation is presented where the lapse is but four days. "[A]pplication for a search warrant must be made within a reasonable time after the commission of the alleged unlawful acts."[2] Warrants issued on probable cause have been held valid though many days passed between the commission of the unlawful act and the issuance of the warrant.[3] If issued on positive knowledge there is less flexibility in determining what is a reasonable length of time. However, reasonableness under the circumstances of the case is still the test. It is not unreasonable to expect that there would be some unconsumed amounts of liquor on the premises remaining from the earlier time when the investigation was made. We think the four-day delay here cannot be held unreasonable as a matter of law.

In Murby v. United States, 1 Cir., 2 F.2d 56, 57, the court said: "As the affidavit discloses that the place where he purchased the liquor was a saloon, we think the commissioner could reasonably infer therefrom that the same line of business was being conducted there 4 days later, when the application for the warrant was made." It would be equally reasonable to conclude in the instant case that the club was still in operation four days after the initial inspection, and even if the liquor there on June 21 were consumed that the stock would have been replenished. In other words, affiant's positive knowledge goes to the operation of an "after-hours" club dispensing liquors, and

1. In re Hollywood Cabaret, 2 Cir., 5 F.2d 651, 653.

2. Cornelius, Search and Seizure, § 167, p. 419.

3. See, e. g., Nuckols v. United States, 69 App.D.C. 120, 99 F.2d 353, certiorari denied sub nom. Floratos v. United States, 305 U.S. 626, 59 S.Ct. 89, 83 L. Ed. 401 (11 and 19 days); United States v. Allen, D.C.E.D.Ky., 147 F.Supp. 955 (16 days); United States v. Callahan, D.C.M.D.Pa., 17 F.2d 937 (13 days).

not necessarily to any specific kind or amount of liquor.[4]

■ Defendants claim execution of the search warrant was also invalid because the officers did not lawfully gain entry into the club but were admitted by the policewoman who opened the door from the inside. The policewoman testified that about the time the raid was to begin she heard knocking on the outside door. Defendant Stokes proceeded through an inner door, closing it behind her, to see who was at the outer door. The latter door has a one-way mirror permitting occupants to see out. Several officers in the raiding party testified they heard an inner door open and close and announced themselves and their purpose. When they received no response they began to break the door down, but were interrupted by the policewoman who opened the door for them. She did so because she observed defendant Stokes return from the outer door without having opened it, and go to a telephone. Having plainly announced themselves, and being refused admittance, the officers were entitled to use force and the aid of a fellow officer from within was not illegal.

We are satisfied concerning the sufficiency of the warrant in other respects. The place to be searched was particularly described, as was the defendant who waited on tables. The affidavit read as a whole clearly indicated that illicit alcoholic beverages were the items to be seized, and while the warrant does not describe them more particularly as to kind and amount, the law does not make that necessary.[5]

With regard to defendants' second general assignment of error, that they were entitled to an acquittal because the Government did not prove guilt beyond a reasonable doubt counsel raises questions of fact.

■ It is argued that since the policeman who signed the affidavit and who accompanied the policewoman did not appear as a witness the missing witness rule created an unfavorable inference against the Government. However, defendants' counsel objected when the Government sought to explain the absence of this witness and its inability to produce him. The missing witness rule is not applicable if it is not in the power of a party to produce a witness,[6] and even where applicable the rule merely gives rise to a permissive inference to be weighed by the trier of fact along with all the other evidence; it does not control the ultimate decision. There is no requirement that an affiant testify at the trial of persons arrested as a result of his part in the proceedings. The policewoman was capable of testifying to all the events that transpired, and the policeman's absence in itself was not fatal to the Government's case.

Due to the policeman's absence defendants contend it was impossible to prove that the money given to defendant Stokes was in payment for the drinks and not a gratuity. But there was ample testimony from which to conclude that such was true.

Appellants have also advanced the entrapment theory as grounds for reversal. It is enough to say that there is no room for its application to the facts of this case.

Affirmed.

4. In United States v. Fitzmaurice, 2 Cir., 45 F.2d 133, 135, the court distinguished In re Hollywood Cabaret, supra, stating that case did not hold "had the evidence of replenishment been 'positive,' that the substituted liquor could not be seized." We note here that affiant was "positive that *other* alcoholic beverages" were concealed for sale. (Emphasis supplied.)

5. Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757; Elrod v. Moss, 4 Cir., 278 F. 123; United States v. Edwards, D.C.E.D.Mich., 296 F. 512; Cornelius, Search and Seizure, § 202, p. 489; 30 Am.Jur., Intoxicating Liquors, § 468.

6. Krupsaw v. W. T. Cowan, Inc., D.C. Mun.App., 61 A.2d 624; 2 Wigmore, Evidence, §§ 285, 286.