**Mary VELARDI and Frances Velardi, Plaintiffs–Appellants,**

v.

**Cornelius R. WALSH, Jr. and Robert L. Boek, Defendants–Appellees.**

No. 376, Docket 94–7212.

United States Court of Appeals, Second Circuit.

Argued Aug. 31, 1994.

Decided Nov. 15, 1994.

Robert D. Wilcox, Troy, NY, for plaintiffs-appellants.

Victor Paladino, Asst. Atty. Gen., Albany, NY (G. Oliver Koppell, Atty. Gen., Peter H. Schiff, Deputy Sol. Gen., Peter G. Crary, Asst. Atty. Gen., on the brief), for defendants-appellees.

Before: NEWMAN, Chief Judge, KEARSE and CARDAMONE, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal concerns the qualified immunity defense of two state police officers who allegedly violated the plaintiffs' constitutional rights when procuring two search warrants and executing one of those warrants. The execution issue arises because of on-the-scene developments that prompted the officers to enter a house next to the one primarily identified in the search warrant. Plaintiffs Mary Velardi and Frances Velardi appeal from the January 20, 1994, judgment of the United States District Court for the Northern District of New York (Con. G. Cholakis, Judge) granting the summary judgment motion of defendants Cornelius R. Walsh and Robert L. Boek. Because we conclude that the defendants are entitled to qualified immunity, we affirm.

## Background

Two different searches are at issue: the search of a residence and the subsequent search of two safe-deposit boxes. The resi-

dence was occupied by plaintiff-appellant Frances Velardi and her husband Crispino Velardi. One of the boxes was leased to Frances and Crispino Velardi, and the other was leased to plaintiff-appellant Mary Velardi (Crispino's mother) and Salvatore Velardi (Crispino's brother). These searches grew out of ongoing narcotics investigations in the environs of Utica, New York. In May and June 1987, officers from the New York State Police, including defendants-appellees Walsh and Boek, assisted the Utica Police in investigating suspected cocaine dealing by Kevin Narbone. The investigation employed a confidential informant, Richard Clair.

In June the investigative team observed two transactions in which Clair purchased cocaine from Narbone, who in turn appeared to be supplied by an unidentified man driving a 1980 silver and grey Ford. The investigators learned that the Ford was registered in the name of Frances Velardi. Further inquiry disclosed that the local electrical utility company supplied electricity to a customer named Velardi residing on Route 49 near Utica; although no address was given, the residence was described as the front unit of a house supplied by a particular utility pole. By ascertaining the location of the particular pole, the Utica Police concluded that the Velardi apartment was in the fourth house west of Lewandrowski Road on Route 49.

In a further effort to identify Narbone's supplier, the investigative team then arranged another transaction involving the informant Clair. Officers in a helicopter observed the silver and grey Ford leave a driveway next to the previously identified residence on Route 49, drive to a point where officers on the ground observed the occupant sell a substance that was shortly thereafter identified as cocaine, and then return to the same driveway on Route 49. On the basis of affidavits from appellees Walsh and Boek summarizing the investigation, a local magistrate issued a "no-knock" warrant to search the previously identified residence on Route 49. The warrant identified the residence both by describing its location ("fourth house west of the Lewandrowski Road") and physical appearance ("a 2½ story wood frame, white and blue with black shu[tt]ers"), and

by characterizing it as "occupied by unknown white male last name Velardi."

Before executing this warrant, the officers happened to see the supplier whom they had previously observed, and they arrested him. He turned out to be Crispino Velardi. A search of Crispino disclosed three packets of cocaine. The officers then drove to the house described in the warrant, taking Crispino with them. A knock at the front door elicited no response. However, the occupants of the rear apartment of the house informed the officers that the Velardis lived in the house next door, i.e., in the third rather than the fourth house west of Lewandrowski Road. A car then drove into the driveway, and the occupants confirmed that the Velardis lived in the third house, in the front apartment. Both houses were served by the same driveway and the same utility pole. Acting on this new information, the officers surrounded the Velardis' actual house but were apparently uncertain whether their warrant authorized them to search it. Appellee Walsh knocked on the door and said that he was looking for "Chris." The person inside, later revealed to be Frances Velardi, told Walsh that "Chris" was "not around" and refused him entry.

There is some dispute about what happened next. The defendant officers allege that they heard a toilet flush several times, leading them to believe that evidence was being destroyed. The plaintiffs deny that the toilet flushed at all or could flush several times in succession. Apparently believing that exigent circumstances existed, the officers broke down the door and conducted an emergency sweep. Once inside, they immediately phoned the magistrate, who orally amended the warrant to correct its descriptive error. The officers then searched the residence.

The search turned up narcotics paraphernalia as well as keys to two safe-deposit boxes at different banks. Crispino and Frances Velardi were arrested but released on bail before the banks reopened the following Monday. Just after 9:00 a.m. on Monday, a local prosecutor learned that several members of the Velardi family, including Crispino, Frances, Mary, and Salvatore, had

just accessed their safe-deposit boxes. Fearing that the Velardis were transferring contraband or evidence from Crispino's and Frances's safe-deposit box to Mary's and Salvatore's, Walsh obtained a search warrant for the two boxes at Norstar Bank. A search turned up $120,000 cash in the box leased to Mary and Salvatore.

Frances and Mary Velardi instituted this damages action pursuant to 42 U.S.C. § 1983 (1988) against Walsh, Boek, and the prosecutor. The complaint alleged a number of constitutional violations by the defendants and also asserted several pendent state-law claims. In opposition to defendants' motion for summary judgment, however, the Velardis endeavored to support only their claims that the defendants acted unconstitutionally in procuring and executing the search warrants for the home and the safe-deposit boxes. Specifically, the Velardis maintained that the defendants deliberately or recklessly misled the magistrates who issued the warrants about material facts relevant to a finding of probable cause. Frances Velardi also maintained that the warrant for her residence was invalid because it failed to describe the premises with particularity, and that no exigent circumstances justified what she alleged became a warrantless search.

The District Court granted summary judgment for the prosecutor on the ground of absolute immunity and for defendants Walsh and Boek on the ground of qualified immunity, and dismissed the complaint. The Velardis seek review of the District Court's ruling as to Walsh and Boek.

## Discussion

As government officials performing discretionary functions, the defendants enjoy a qualified immunity that shields them from personal liability for damages under section 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Zavaro v. Coughlin*, 970 F.2d 1148, 1153 (2d Cir.1992), or insofar as it was objectively reasonable for them to believe that their acts did not violate those

rights, *see Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Oliveira v. Mayer*, 23 F.3d 642, 648 (2d Cir.1994), *petition for cert. filed*, 63 U.S.L.W. 3268 (Sept. 14, 1994).

## A. Procurement of the Search Warrants

The Velardis allege that Walsh and Boek deliberately or recklessly misled the magistrates who issued the search warrants. "Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, ... the shield of qualified immunity is lost." *Golino v. City of New Haven*, 950 F.2d 864, 871 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992) (citations omitted). A section 1983 plaintiff challenging a warrant on this basis must make the same showing that is required at a suppression hearing under *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978): the plaintiff must show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause. *Golino*, 950 F.2d at 870–71; *see Franks*, 438 U.S. at 171–72, 98 S.Ct. at 2684–85. Unsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge; to mandate a hearing, the plaintiff must make specific allegations accompanied by an offer of proof. *See Franks*, 438 U.S. at 171, 98 S.Ct. at 2684. Moreover, when police officers move for summary judgment on the basis of qualified immunity, "[p]laintiffs may not unwrap a public officer's cloak of immunity from suit simply by alleging even meritorious factual disputes relating to probable cause, when those controversies are nevertheless not material to the ultimate resolution of the immunity issue." *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992). Disputed issues are not material if, after crossing out any allegedly false information and supplying any omitted facts, the "corrected affidavit" would have supported a finding of probable cause. *Soares v.*

*State of Connecticut,* 8 F.3d 917, 920 (2d Cir.1993); *Cartier,* 955 F.2d at 845.

■■■ The materiality of a misrepresentation or an omission in this context is a mixed question of law and fact. *Golino,* 950 F.2d at 871. The legal component depends on whether the information is relevant to the probable cause determination under controlling substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). But the weight that a neutral magistrate would likely have given such information is a question for the finder of fact, so that summary judgment is inappropriate in doubtful cases.[1] *See Golino,* 950 F.2d at 871–72; *see also TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2132–33, 48 L.Ed.2d 757 (1976). Nonetheless, if the evidence, viewed in the light most favorable to the plaintiffs, discloses no *genuine* dispute that a magistrate would have issued the warrant on the basis of the "corrected affidavits," then under the ordinary standard for summary judgment, *see Turtur v. Rothschild Registry International, Inc.,* 26 F.3d 304, 309 (2d Cir. 1994), a qualified immunity defense must be upheld.

■■■ In sum, to survive the defendants' motion for summary judgment on this issue, the plaintiffs must satisfy three conditions: they must have made an offer of proof supporting specific allegations of deliberate or reckless misrepresentation, as required by *Franks;* the alleged misrepresentations must be legally relevant to the probable cause determination; and there must be a genuine issue of fact about whether the magistrate would have issued the warrant on the basis of "corrected affidavits."

■■■ The Velardis have not sustained this burden here. There can be no genuine dispute that the magistrates would have found probable cause sufficient for both warrants even after correction for whatever factual errors were reported. In the affidavit for the warrant for the Velardi residence, Walsh incorrectly implied that all relevant information relating to Crispino Velardi's cocaine dealing came from Walsh's personal observation, whereas much of it was based on the observations of other members of the investigative team. The affidavit also stated that Walsh had information from a "reliable informant" (*i.e.,* Richard Clair) "that an individual last name Velardi is selling cocaine through Kevin Narbone and other individuals in the Utica/Marcy area and living at the above described address," whereas Clair did not know the name, the identity, or the address of Narbone's supplier. Rather, the investigative team itself had identified the name and residence of the supplier by tracing the registration of the supplier's car to Frances Velardi, by learning from utility company records that a customer named Velardi lived in the front apartment in a house supplied by a particular utility pole, and finally by observing the supplier leave from and return to a driveway serving the identified apartment.

■■■ Walsh's factual errors, even if deliberate, could not possibly have affected the magistrate's decision to issue the warrant. The observations of fellow officers are a reliable basis upon which to determine probable cause, *United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1965), and the circumstantial evidence linking Narbone's supplier to the residence described in the warrant provided probable cause to believe that evidence of the supplier's narcotics business would be found at the apartment described, *see United States v. Travisano,* 724 F.2d 341, 346–47 (2d Cir. 1983) (holding that "articulable connection"

---

1. In this respect, our review of the "corrected affidavit" in this context differs from judicial review of a probable cause determination by a magistrate on the basis of truthful affidavits. In the latter case, a Court's review of the magistrate's prior determination must be deferential, and it is therefore limited to ensuring that a "substantial basis" underlay the magistrate's conclusion that probable cause existed. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983). In contrast, where officers procuring a warrant have deliberately misled the magistrate about relevant information, no magistrate will have made a prior probable cause determination on the basis of the "corrected affidavits." In such circumstances, we do not review a magistrate's prior determination of probable cause, but rather try to predict whether a magistrate would have found probable cause if he had been presented with truthful information. *See Golino,* 950 F.2d at 872. This is a question of fact rather than of law.

or "nexus" between residence and car used in crime provided probable cause to search residence for evidence).

The alleged omissions, such as that Crispino Velardi had not been seen armed or that no alleged drug transactions had taken place at the residence to be searched, were simply not material. The affidavits did not imply that Velardi was armed or was dealing narcotics in his home. No omitted circumstances were "critical to the evaluation of probable cause." *Brown v. D'Amico*, 35 F.3d 97, 99 (2d Cir.1994).[2]

■ There is also no genuine issue of material fact concerning the warrant for the safe-deposit boxes. It is not disputed that Mary and Frances Velardi both accessed their safe-deposit boxes when the bank opened on Monday. A memorandum from a bank employee also confirms that a prosecutor was informed that morning that both "Chris" Velardi and his mother Mary had already accessed their safe-deposit boxes at 9:00 that morning. When combined with indisputable evidence of narcotics activity by Crispino Velardi and Walsh's expert averments that narcotics dealers frequently store contraband and other evidence in their safe-deposit boxes, this information from the bank employee indisputably provided probable cause to search both boxes. Mary and Frances Velardi have not shown that there is any genuine dispute about these material facts. Walsh's error in reporting that information concerning the banks came from his personal observations was again immaterial, because the actual source of the information, the bank employee, would be deemed a sufficiently reliable source of information for a probable cause finding under the circumstances. Most of the plaintiffs' other allegations of deception concern superfluous information in

Walsh's affidavit relating to the Velardis' conduct at the two banks. Moreover, most of these allegations have not been supported by the offers of proof required under *Franks*. The defendants were therefore entitled to summary judgment on their qualified immunity defense in relation to their conduct in procuring both warrants.

B.   Execution of the Warrant to Search the Velardi Residence

A somewhat more substantial question is posed by the claim that the officers entered premises other than those described in the warrant, thereby making, in effect, an unauthorized warrantless entry. The warrant identified the house primarily by its location and physical appearance and secondarily by the identity of its occupant. The warrant was issued for: "The fourth house west of the Lewandrowski Road a 2½ story wood frame, white & blue with black shu[tt]ers 1st floor front Apt with apt in rear first and second floors … occupied by unknown white male last name Velardi," who was further described by age, physical characteristics, and clothing. Only at the last moment, just as they were preparing to execute the warrant, did the defendants discover that the house occupied by Velardi was the third house, not the fourth house as described in the warrant.

■ Whether or not the Fourth Amendment's particularity requirement would have been satisfied on these facts in the context of a motion to suppress, *cf. United States v. Ellis*, 971 F.2d 701, 703–05 (11th Cir.1992)—a matter we do not decide, we conclude that the defendants' qualified immunity shields them from liability because, beyond any reasonable dispute, it was objectively reasonable for them to believe that their actions did not

**2.** The fact that the premises described by the warrant were later revealed not to be the Velardis' actual residence is irrelevant to the probable cause determination at the time that the warrant was issued. "The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate." *Maryland v. Garrison*, 480 U.S. 79, 85, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987). The information the police had at the time they applied for the warrant established a nexus or articulable con-

nection between the drug supplier Velardi and the premises described in the officers' affidavits and in the warrant itself. The fact that Velardi did not in fact live at that residence did not render the investigators' conclusion unreasonable *ex ante*. The warrant was therefore valid as issued. Whether the officers acted constitutionally when they searched the Velardis' residence after they discovered their error presents a separate constitutional issue, *see id.* at 84, 107 S.Ct. at 1016–17, which we discuss below.

violate Fourth Amendment requirements. The officers had a warrant for premises described primarily as the fourth house, but also identified as premises occupied by Velardi. Just before entering, they fortuitously learned from several neighbors that Velardi lived in an apartment at the front of the third house. Upon knocking and asking for "Chris," they were informed by someone inside the third house that "Chris" was "not around," a response that added significant confirmation to the already reliable report from the neighbors that Velardi lived in the third house. Even if we put to one side the dispute as to whether the officers heard the sound of a toilet repeatedly being flushed, the undisputed facts show a highly reliable basis for interpreting the no-knock warrant to mean the third house, now credibly understood to satisfy the warrant's designation as the one occupied by Velardi, rather than the one described as the fourth house. Moreover, the only invasion of privacy that occurred based on this entirely plausible interpretation of the warrant was entry and an emergency sweep; a search of the premises was not conducted until the magistrate, informed of what the officers had learned on the scene prior to entry, explicitly authorized a search of the third house.

No jury could reasonably fail to find on the undisputed circumstances that it was objectively reasonable for the officers to take the actions they did. They had obtained a warrant, and reliable information from neighbors and an occupant had provided them with a reasonable basis for interpreting the warrant to refer to the third house, rather than the fourth house. Moreover, their intrusion was minimal until their authority to search the

interior of the apartment in the third house was explicitly given by a magistrate.

Furthermore, had the officers reflected on the state of the law governing particularity requirements, they would have encountered considerable ambiguity as to the refinement of standards in this context. Initially, we note that the general rule regarding particularity is clear enough: " '[i]t is enough if the description is such that the officer[s] armed with a search warrant can with reasonable effort ascertain and identify the place intended.' " *National City Trading Corp. v. United States,* 635 F.2d 1020, 1024 (2d Cir.1980) (quoting with alterations *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925)); *see also United States v. Santore,* 290 F.2d 51, 66–67 (2d Cir.1960), *cert. denied,* 365 U.S. 834–35, 81 S.Ct. 745–46, 749, 752, 5 L.Ed.2d 743–45 (1961); *United States v. Fitzmaurice,* 45 F.2d 133, 135 (2d Cir.1930). Courts of Appeals have rejected Fourth Amendment challenges to warrants that contain partial misdescriptions of the place to be searched so long as the officer executing the warrant could "ascertain and identify the target of the search *with no reasonable probability of searching another premises in error," United States v. Valentine,* 984 F.2d 906, 909 (8th Cir.) (emphasis added), *cert. denied,* —— U.S. ——, 114 S.Ct. 93, 126 L.Ed.2d 60 (1993). Warrants have been upheld despite "technical errors," such as an incorrect street address, when the possibility of actual error is eliminated by other information, whether it be a detailed physical description in the warrant itself, supplemental information from an appended affidavit, or knowledge of the executing agent derived from personal surveillance of the location to be searched.[3]

---

3. *See, e.g., United States v. Valentine, supra,* 984 F.2d at 908–09 (upholding search of unnumbered building that executing officers had observed for several days, although warrant mistakenly identified it as attached to 3048 Thomas rather than 3050 Thomas); *United States v. Garza,* 980 F.2d 546, 551–52 (9th Cir.1992) (upholding search of building that was accurately described in warrant, although warrant mistakenly gave address as 32124–26th Ave. rather than 33124–26th Ave.; no building existed at address given in warrant, and police ran check on licenses of vehicles in driveway to confirm occupants' identities before executing search); *United States v. Gahagan,* 865 F.2d 1490, 1496–99 (6th Cir.)

(upholding search despite failure of particularity in warrant itself, because additional information in accompanying affidavit and knowledge of executing agents could be used to supplement warrant and left no risk of mistaken search of another premises), *cert. denied,* 492 U.S. 918, 109 S.Ct. 3242, 106 L.Ed.2d 590 (1989); *United States v. Bonner,* 808 F.2d 864, 866–67 (1st Cir.1986) (upholding search despite "technical omission" in warrant, because the "agents, having previously conducted the surveillance, knew exactly which house they wanted to search"), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987); *United States v. Burke,* 784 F.2d 1090,

What the case law has not clarified, however, is whether a misdescription can be overlooked only when the correcting information is known to the officers at the time they obtain the warrant or also when such information reliably comes to their attention thereafter. Decisions of the Supreme Court, *Maryland v. Garrison, supra,* and of this Circuit, *see National City Trading Corp. v. United States, supra,* 635 F.2d at 1024–26; *United States v. Santore, supra,* 290 F.2d at 66–67; *United States v. Fitzmaurice, supra,* 45 F.2d at 135, have not resolved this precise question. Language in *Garrison* appears to permit reliance on information acquired after issuance of the warrant. "[W]e must judge the constitutionality of [the officers'] conduct in light of the information available to them at the time they acted." 480 U.S. at 85, 107 S.Ct. at 1017. The force of this statement is unclear, however, since in that case the new information prompted officers executing a warrant for "the premises known as 2036 Park Avenue third floor apartment" to stop searching upon the realization that they were in two distinct apartments. The Court noted that the executing officers were "required to discontinue the search of [the second] apartment as soon as they discovered that there were two separate units on the third floor" and that the unit they were searching might have been included in the warrant erroneously. *Id.* at 87, 107 S.Ct. at 1018. The new information narrowed the scope of a warrant, though what was seized prior to the narrowing was nonetheless validly obtained. Our case is almost the opposite: the scope of a warrant is broadened, or at least shifted to the premises next door, by new information, prompting the officers to enter the next-door premises upon realizing that the warrant's primary description was incorrect.

We do not think that the case law clearly established that police officers executing a warrant cannot rely on the sort of information gathered at the scene in this case to reinterpret the warrant's identification of the premises to be searched, even if the war-

rant's identification is regarded as erroneous. However Fourth Amendment standards might evolve in this area, these officers were entitled to believe that they acted reasonably, a conclusion we reach as a matter of law.

The judgment of the District Court is affirmed.

1092–93 (11th Cir.), *cert. denied,* 476 U.S. 1174, 106 S.Ct. 2901, 90 L.Ed.2d 987 (1986); *United States v. Fitzmaurice, supra,* 45 F.2d at 135 (L. Hand, J.) (upholding search despite error in ad-

dress because "[i]f one followed the warrant one must reach the proper building, about whose identity there could be no doubt, except by an overscrupulous regard to the letter").