**Therese DEFELICE, Plaintiff–Appellant,**

v.

**Vincent INGRASSIA, Nicholas Meriano, Lawrence Ciambrello, Paul F. Carlson, Cheryl Thomas and Danny Garcia, Defendants–Appellees.**

**Docket No. 02–7758.**

United States Court of Appeals, Second Circuit.

April 28, 2003.

John R. Williams, New Haven, Connecticut, for Plaintiff–Appellant.

Barbara Brazzel–Massaro, Associate City Attorney, Bridgeport, Connecticut, for Defendants–Appellees.

Present: NEWMAN, POOLER, and KATZMANN, Circuit Judges.

### SUMMARY ORDER

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 28th day of April, two thousand and three.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and it hereby is **AFFIRMED.**

In April of 1998, Vincent Ingrassia, an acting detective with the Bridgeport Police Department, was investigating allegations that someone had made "unforced entries" into several offices at the Bridgeport Hospital School of Nursing. In the course of that investigation, Detectives Lawrence Ciambrello and Nicholas Meriano learned that Therese DeFelice ("Plaintiff–Appellant"), a student at the school, was dispensing prescription drugs from her dormitory room. The officers conducted a "controlled buy" in which the confidential informant procured Valium from Plaintiff–Appellant. Based upon this information, Ciambrello and Meriano obtained warrants to search Plaintiff–Appellant's room and person.

On May 6, 1998, Ingrassia, Sergeant Paul Carlson, and Officers Cheryl Thomas and Danny Garcia executed the search warrants. In the course of searching Plaintiff–Appellant's room, the officers allegedly discovered a set of master keys belonging to Bridgeport Hospital and straws with a powdery residue that field tested as cocaine. The officers also seized a variety of prescription medications and controlled substances, as well as $220 in cash and an empty prescription bottle in the name of Carla Lee. Officer Cheryl Thomas searched Plaintiff–Appellant's person in the women's restroom. Officer Thomas asked Plaintiff–Appellant to lift her shirt and then pulled the front and

back of her bra. Officer Thomas also asked Plaintiff–Appellant to lower her pants and touch her toes so that she could pull and look down the back of Plaintiff–Appellant's underwear.

Detective Ingrassia subsequently obtained a warrant to arrest Plaintiff–Appellant for larceny of the keys. However, the charges were dismissed November 30, 1998, and the Bridgeport Police Department either returned or destroyed the seized items. On February 17, 1999, Sergeant Carlson applied for a warrant to arrest Plaintiff–Appellant on a variety of charges stemming from the narcotics investigation. Although Sergeant Carlson obtained the warrant March 18, 1999, he waited two and a half months and then arrested Plaintiff–Appellant on her birthday. These charges were also dismissed, and Plaintiff–Appellant filed suit under 42 U.S.C. § 1983 against Ciambrello, Meriano, Ingrassia, Carlson, Thomas, and Garcia ("Defendants–Appellees"), alleging that they violated her Fourth Amendment rights. Plaintiff–Appellant also asserted supplemental claims for intentional infliction of emotional distress. The district court granted Defendants–Appellees' motion for summary judgment on the federal civil rights claims and declined to exercise supplemental jurisdiction over the state law claims.

On appeal, Plaintiff–Appellant argues that the district court erred in granting summary judgment, because there were triable issues whether: 1) Sergeant Carlson relied upon false information and omitted material information in obtaining the second arrest warrant; and 2) the searches of Plaintiff–Appellant's room and person were conducted in an unreasonable manner. Plaintiff–Appellant has abandoned all other grounds for her federal civil rights claims.

■ Plaintiff–Appellant argues that Sergeant Carlson arrested her without probable cause, as he misrepresented in his arrest warrant affidavit that the officers seized certain items from her room. Specifically, Plaintiff–Appellant denies that she possessed the straws containing cocaine residue, the pills found in the Tupperware container, and the keys to the hospital. In order to prevail, Plaintiff–Appellant must make a "substantial preliminary showing" that Sergeant Carlson knowingly and intentionally, or with reckless disregard for the truth, made false statements in his arrest warrant affidavit and that the allegedly false statements were "necessary to the finding of probable cause." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991). Unsupported conclusory allegations of falsehood or material omission are insufficient to support a finding that an arrest warrant lacked probable cause. *Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir.1994) (citations omitted).

Regardless, there was probable cause in the absence of Sergeant Carlson's allegedly false statements. Plaintiff–Appellant does not dispute that she possessed numerous prescription drugs and controlled narcotics. Plaintiff–Appellant also does not dispute that she possessed $220 in cash, as well as an empty prescription bottle in the name of Carla Lee, even though she lived alone. Moreover, the warrant application was based upon information from "prudent and credible witnesses" that Plaintiff–Appellant was "illegally supplying prescription drugs from her residence." Indeed, Plaintiff–Appellant does not dispute that "[d]uring the course of this investigation, [the Bridgeport Police Department] became aware of allegations that [she] was dispensing narcotic substances to students at the Bridgeport Hospital School of Nursing." Therefore, Sergeant Carlson's allegedly false statements were not necessary to the find-

ing of probable cause to obtain a warrant for her arrest. The existence of probable cause defeats her claims. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir.1995).

▬ Plaintiff–Appellant also argues that Sergeant Carlson deliberately omitted information from the warrant application. "[T]he plaintiff must show that the affiant knowingly and deliberately, or with a reckless disregard of the truth, made false statements or material omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause." *Velardi*, 40 F.3d at 573. Plaintiff–Appellant maintains that Sergeant Carlson did not include information that the narcotics seized during the search had been destroyed. However, the district court correctly noted that Plaintiff–Appellant proffers no evidence that the narcotics had, in fact, been destroyed when Sergeant Carlson applied for the second arrest warrant, and, if so, that Sergeant Carlson actually knew that the evidence had been destroyed. The fact that Sergeant Carlson applied for the arrest warrant nine months after the search, standing alone, is insufficient to support an inference of bad faith, as there is no evidence that the prosecution was barred by the applicable statute of limitations. Plaintiff–Appellant argues that Sergeant Carlson erred by omitting information that the larceny charge against her had been dismissed. Although this charge stemmed from evidence recovered during the search, it was entirely distinct from the charges upon which Sergeant Carlson sought to arrest Plaintiff–Appellant. Moreover, there is no evidence to support Plaintiff–Appellant's conjecture that had Sergeant Carlson informed the issuing judge about the prior charge, the judge would have concluded that she had been "set up by some person or persons inter-ested in having her charged with crimes of which she was entirely innocent."

▬ Finally, the district court correctly concluded that Plaintiff–Appellant failed to create a triable issue whether the officers conducted the searches of her room and person in an unreasonable manner. With respect to the search of her room, Plaintiff–Appellant complains only that she was not allowed to observe the officers' activities. However, she cites no relevant authority that this was unreasonable and fails to proffer any evidence to dispute Defendants–Appellees' explanation that they excluded Plaintiff–Appellant during the search and closed the door because her room, which was no larger than 10 feet by 15 feet, was too small to search with the four officers and Plaintiff–Appellant present. Plaintiff–Appellant cites a series of cases from other circuits holding that searches are unreasonable when officers destroy property or roust residents from their beds and detain them in handcuffs for extended periods of time. However, Plaintiff–Appellant proffers no evidence of any such misconduct. The search took less than an hour, and Plaintiff–Appellant does not contend that she was handcuffed or mistreated during this time. As the warrant authorized the officers to search for narcotics, money, and records, they were entitled to search dresser drawers, closets, cupboards, and boxes, which could have held the items they sought.

▮ Plaintiff–Appellant argues that the search of her person was unreasonable. However, unlike *McKelvie v. Cooper*, 190 F.3d 58, 60 (2d Cir.1999), the officers had a warrant to search Plaintiff–Appellant's person and did not conduct an intrusive search. A female officer brought Plaintiff–Appellant to the women's restroom and looked under her clothing. The officer did not conduct a body cavity search or a "visual body cavity search," and the offi-

cer's only force was to pull Plaintiff–Appellant's underwear to determine whether it contained narcotics. Plaintiff–Appellant cites no authority for the proposition that this search was unreasonable.

Based upon the foregoing, the judgment of the United States District Court for the District of Connecticut is **AFFIRMED.**