**Marie SPAFFORD and Louis Ruggirello, Plaintiffs,**

**v.**

**Police Officer ROMANOWSKY, and John Does 1–17, Defendants.**

**No. 02 Civ. 6348(SCR).**

United States District Court, S.D. New York.

Sept. 3, 2004.

Michael O'Neill, New York, NY, for Plaintiffs.

Sharon K. Worthy–Bulla, Goshen, NY, for Defendant.

ROBINSON, District Judge.

This is an action under 42 U.S.C. § 1983 for unspecified damages in compensation for the alleged violations of plaintiffs' rights to be free from unreasonable search and seizure under the 4th Amendment.[1] Complaint, ¶ 1.

---

[1]. Plaintiffs' complaint also states that this action seeks to remedy a violation of plaintiffs' right to criticize public officials without fear of retaliation under the 1st Amendment. Complaint, ¶ 1. However, neither the complaint nor the motion papers describe or address any criticism by plaintiffs of public officials or public officials retaliation for such speech. This cause of action is therefore not addressed in this opinion.

## I. Facts

Unless otherwise stated, the following facts are undisputed.

Louis Ruggirello, a retired New York City Fireman, is a "gentleman farmer" in Montgomery, New York. On his 50 acre farm he raises a variety of livestock and farm animals, including deer, emu, llamas, horses, and a few cattle, together with numerous small animals and birds. Marie Spafford is his daughter, and in August 1999, she and her family lived on the Ruggirello farm.

Over the years, the area in which the Ruggirello farm is located has become increasingly residential, and by the mid–1990s, most of Ruggirello's immediate neighbors were residential homeowners. For a number of years Ruggirello was engaged in a "more or less running battle" with his neighbors, who objected to the sounds, smells and sight of his animals.

The events that led to this action were in fact set into motion by these neighbors. Several neighbors made sworn statements that claimed that Ruggirello's animals would regularly trespass and occasionally even die on the neighbors' property. In their statements, the neighbors claimed that they believed Ruggirello's animals were in ill health and without an adequate supply of food or water.

Plaintiffs claim that Orange County Deputy Sheriff Diane Cardinale, who is no longer with the Office, was "unofficially designated as the Department's 'animal control officer.'" Defendant Romanowski claims that there was no one within his department who had that title or served that role. It is undisputed that Deputy Sheriff Cardinale responded to a complaint about the Ruggirello farm in March 1998. She found a number of minor violations at the farm. The official Incident Report shows that Deputy Sheriff Cardinale told Ruggirello that "these were not suitable conditions for animals and that it could constitute animal cruelty." Ruggirello was given three days to remedy the violations, and he complied.

In May 1999, Deputy Sheriff Cardinale was contacted by State Police Troopers who reported that they had received a complaint from Ruggirello's neighbors. She investigated the complaint and recorded an Incidence Report that stated,

> Over the past year I have received numerous complaints from Mrs. Zeigler [a neighbor who was a complainant in the incident that is the subject of this lawsuit] oftentimes she will call me on a weekly basis. Several times I responded to the Ruggirello property and found no neglect or cruelty... It is my opinion that any type of cruelty or neglect that occurred in the past by Mr. Ruggirello was due to ignorance and not intent. When educated he complies with all the needs of his animals. I advised Mr. Ruggirello that I would occasionally be making future visits to assure the good health and condition of the animals. It is also my opinion and findings that *almost* all of Mrs. Zeigler's complaints are unfounded and that due to prior conditions that may have existed at the Ruggirello property she resents Mr. Ruggirello owning any animals.

Incident Report re Incident No. 5313, Narrative (emphasis added). That Report included the statement, "all of the animals appeared to be in good health with adequate housing and proper diets," and specifically addressed some particular animal health issues. Id.

On or about August 5, 1999, a call made to the Orange County Sheriff's Office was made by Patricia Valusek, a civilian associated with the Ulster County Humane Society. Valusek stated that she had reason to believe the animals on the Ruggirello

property were diseased, malnourished or otherwise not being cared for properly. She complained about Deputy Sheriff Cardinale and asked that a different Officer be sent to investigate the property. The call was taken by former Undersheriff John Thompson, then the second highest ranking member of the Office. He assigned Deputy Sheriff Adam Romanowksi to investigate the matter and take appropriate action if necessary.

Members of the Sheriff's Office did not review Deputy Sheriff Cardinale's notes, speak with her about her investigations of similar complaints, or examine any records of similar complaints.

On or about August 5, 1999, Deputy Sheriff Romanowski interviewed complainant/neighbors Sister Rose Marie Levesque, Erika Ziegler, Dorothy Woehlkens and Charles Woehlkens. He completed a questionnaire based upon each interview and obtained voluntary sworn statements from each person. Deputy Sheriff Romanowski also interviewed and obtained a statement from Patricia Valusek from the Ulster County Humane Society. (Plaintiffs allege that the statements obtained by Deputy Sheriff Romanowski "essentially reiterated the complaints that had already been thoroughly investigated by Cardinale, and they were on their face borderline ridiculous and failed to provide any basis to conclude that Ruggirello was mistreating his animals.")

On this same day, Romanowski drove by the premises and observed several animals that appeared unkempt and/or diseased, including but not limited to an emu, a llama, and a dog shaking its head uncontrollably. He did not observe any available water or shelter for the animals.

On the basis of these observations and the statements of the five complainants, on August 6, 1999, Defendant Romanowski applied for and was granted a warrant to search the premises. His application for a search warrant did not mention that another Deputy Sheriff had investigated similar complaints in May and found them meritless. After obtaining the search warrant, but before executing same, he reviewed the reports of the investigation conducted by Deputy Sheriff Cardinale.

Deputy Sheriff Romanowski, Chief Richard Onorati (then-Sergeant Richard Onarati), Deputy Sheriff Paul Arteta of the Orange County Sheriff's Office and other unidentified officers of the Town of Montgomery Police Department executed the warrant a little after 8:00 AM on August 9, 1999. Prior to the execution of the Warrant, members of the Town of Montgomery Police Department advised Deputy Sheriff Romanowski and Chief Onorati that there were weapons known to exist at the residence.

When law enforcement personnel arrived to execute the search warrant, plaintiff Spafford answered the door. Deputy Sheriff Romanowski informed her of the purpose of the visit and asked who was in the house. Spafford told him that her children were upstairs sleeping. Plaintiffs' large dog ran to the entrance of the house, and Onorati drew his gun because he felt threatened by the animal. Spafford acted to control her animal, and then went inside.

Spafford claims that she asked if she could telephone the state police, but the law enforcement officers did not permit her to do so. Deputy Sheriff Romanowksi reports that he advised her that placing such a phone call was not necessary at that time, but did not prevent her from calling the state police. She also requested permission to change clothes. Spafford reported that there were children sleeping upstairs and a man somewhere on the premises. The officers asked her to wake

her children and bring them out of the house. She went upstairs, accompanied by Deputy Sheriff Romanowski and, she claims, by Chief Onorati. Spafford attempted to lock herself in the bathroom. She claims that this was done to ensure privacy in which to change. While in the bathroom, she called her sister. Deputy Sheriff Romanowski placed his body in the door to prevent Spafford from closing and locking it.

The officers stated that they felt that a dangerous situation was created by Spafford attempting to lock herself in the bathroom, as they had been notified that there were weapons on the premises. Chief Onorati, the ranking officer at the scene, told Deputy Sheriff Romanowski to handcuff Spafford. He did so, and then walked with her downstairs, and put her in the back of a squad car, where she remained for about an hour.

Spafford claims that "Romanoski [sic] forcibly and with undue and excessive force removed [her] from her home and put her in handcuffs. Romanoski's [sic] use of excessive force was causing Spafford to suffer pain, and when Spafford protested Romanoski [sic] tightened the handcuffs to increase the pain." Complaint, ¶ 16. In her answer to this motion, Spafford claims that while she was walking with Deputy Sheriff Romanowski, one of her shoes fell off, and that when she went to stop and put it on her foot, he shoved her, causing injury to her hip and lower back. She also claims that he held her too tightly as they were walking, and that she complained to him of same.

Deputy Sheriff Romanowski and the other officers do not remember Spafford stumbling, being pushed, or complaining of any pain from the handcuffs or anything else. The officers contend that Spafford was uncooperative and belligerent during their attempt to secure the premises.

No mistreated animals were found on the premises. No one was arrested and no property was seized. Guns were found on the premises.

In his deposition, Ruggirello admitted that he was found guilty of one count of animal cruelty in 1993; that he was sentenced to three years probation; and that he violated that probation and served 60 days of a 90 day sentence for that violation. He has not been convicted of any offense related to farm animals or animal cruelty, or received any violations, since that time.

At the time of the incident, Spafford was on summer break from her job as a teacher's aide in "Kinder College," where the students were three and four year old children. She did not work in September and October allegedly due to injuries she sustained during the incident; she asked for November off as well, but her employer terminated her position and told her they had to fill her position with someone else. Spafford took painkillers prescribed by her doctor for two months, and saw a chiropractor for approximately a month and a half after the incident. She complains that her hip and wrist still get numb and that her hip injury made a subsequent pregnancy more difficult.

## II. Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir.2000); see also Fed.R.Civ.P. 56(c).

Romanowski has moved for summary judgment, alleging that plaintiffs cannot establish any action or omissions by Roma-

nowski that violated the plaintiffs' civil rights. He makes the following assertions: first, that the search warrant was valid; second, that the detention of Spafford was valid; third, that excessive force was not used; fourth, that Romanowski was entitled to qualified immunity; and fifth, that Orange County was not liable for the officers' actions.

## A. The standard for qualified immunity

■ Plaintiffs sue Deputy Sheriff Romanowski and the John Does "as employees of the Town of Montgomery and the County of Orange [who] were acting under color of state law." Complaint, ¶ 17. As government officials performing discretionary functions, a defendant enjoys a qualified immunity that shields him from personal liability for damages under section 1983 "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Zavaro v. Coughlin,* 970 F.2d 1148, 1153 (2d Cir. 1992), or insofar as it was objectively reasonable for him to believe that his acts did not violate those rights. *Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

## B. The search warrant

■ An officer who relies in good faith upon a warrant issued by a neutral and detached magistrate upon a finding of probable cause is presumptively shielded by from personal liability for damages. *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert denied,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992). An officer loses that qualified immunity, however, when he "knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause." *Id,* 950 F.2d at 871. To sustain a claim that an officer has materially misled a magistrate on the grounds for probable cause, a plaintiff must show that the officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or material omissions in his application for a warrant, and that such statements or omissions were necessary to the finding of probable cause. *Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir.1994). Thus, to survive a defendant's motion for summary judgement on the issue of wrongful procurement of a search warrant, plaintiffs must (1) make an offer of proof supporting specific allegations of deliberate or reckless misrepresentation, (2) show that the alleged misrepresentations are legally relevant to the probable cause determination, and (3) show that there is be a genuine issue of fact about whether the magistrate would have issued the warrant on the basis of corrected affidavits. *Id.,* 40 F.3d at 574. Summary judgment is inappropriate in doubtful cases, because the weight that a neutral magistrate would have given such information is a question for the finder of fact. *Id.*

■ Plaintiffs allege that Romanowski either intentionally or recklessly concealed material information in his warrant application. Specifically, they contend that Deputy Sheriff Romanowski intentionally or recklessly concealed the fact that neighbors had complained in the past, and that their complaints had been found to be baseless by a Deputy Sheriff from the State Court Judge who issued the warrant. They assert that such information was material to the finding of probable cause, and that had it been in the magistrate's hands, probable cause would not have issued.

■ This allegation is meritless on two grounds. First, the previous investi-

gations and reports by Deputy Sheriff Cardinale are legally irrelevant to the warrant application at issue because the information contained in them was stale. The relevance of information given in a warrant application is determined by the age of the facts and the nature of the conduct alleged to have violated the law. *United States v. Ortiz*, 143 F.3d 728, 732 (2d Cir. 1998). The incident reports taken by Deputy Sheriff Cardinale are dated three and seventeen months before August 5, 1999. While such time lapses have occasionally been tolerated in the finding of probable cause for ongoing criminal activity, such as narcotics conspiracies, *United States v. Martino*, 664 F.2d 860, 872 (2d Cir.1981), they have not been and should not be tolerated for complaints of isolated illegal acts. *Wagner*, 989 F.2d at 75 (2d Cir. 1993). "While there is no bright line rule for staleness, the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir.1993). While the issue addressed here is not positive information supporting a search warrant, but rather the omission of negative results from prior investigations, the analysis must remain the same. To wit: the concerns voiced by plaintiffs' neighbors on August 5, 1999 were not in regard to activity that took place in prior months, but rather to concerns that were pending on the day they were interviewed. While the concerns expressed on August 5, 1999 were similar to earlier concerns by neighbors, Deputy Sheriff Cardinale's investigations and reports were specifically targeted at complaints that existed at a specific point in time, not an ongoing enterprise of bad acts.

Second, even if Deputy Sheriff Cardinale's reports had been disclosed, they would not have negated the finding of probable cause. Deputy Sheriff Romanowski provided the judge with probable cause in the form of sworn statements from five complainants and the results of his own investigation into the allegations of animal mistreatment. Each complaint must stand on its own, and prior complaints are not necessarily deemed relevant to an instant complaint. Furthermore, the incident reports that the plaintiffs claim destroy probable cause do not do so. The incident report of May 4, 1999 found "numerous violations," though none were of a serious nature, and stated that "almost" but not all past complaints by one of the five neighbors interviewed in the instant incident were unfounded. The incident report of March 7, 1998 included a statement that conditions on plaintiffs' farm "were not suitable for animals and ... could constitute animal cruelty."

Deputy Sheriff Romanowski did not intentionally or recklessly mislead the magistrate by not including the two prior incident reports. Probable cause existed to issue the search warrant. The warrant was valid.

**C. The seizure of Spafford**

 "A seizure of a person occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *United States v. Fountain*, 2 F.3d 656 (6th Cir.1993) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The Fourth Amendment to the United States Constitution provides that "[t]he right of people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." Generally, even where, as here,

an officer does not make a formal arrest, seizure of a person must be supported by probable cause. *Dunaway v. New York,* 442 U.S. 200, 208, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). In some cases, seizures less intrusive than an arrest have withstood Fourth Amendment scrutiny. *Michigan v. Summers,* 452 U.S. 692, 697–98, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). There, the intrusion on the citizen's privacy "was so much less severe" than that involved in a traditional arrest that "the opposing interest in crime prevention and detection and in the police officer's safety" supported the seizure as reasonable. *Id.* "The interest in minimizing the risk of harm to the officers" may justify detention of an occupant during the search. *Id.,* at 702, 101 S.Ct. 2587.

■■■ When the officers assembled to execute the search warrant, they knew they were entering a property on which there were weapons and weapons were in fact found on the property. Because weapons were known to exist, gathering all occupants of the premises outside the building as quickly as possible was a security priority. It was reasonable for Deputy Sheriff Romanowski to prevent Spafford from locking herself in the bathroom, as he did not know if there were weapons secreted there. All the officers present at the scene testified that Spafford was uncooperative in exiting the bathroom and residence voluntarily such that the residence could not be secured without her removal. Spafford's uncooperative behavior endangered the officers in the execution of the warrant, and justified the application of handcuffs and securing of her in the patrol car. Because probable cause existed to seize Spafford, Deputy Sheriff Romanowksi's qualified immunity survives plaintiffs' claim that her seizure was not reasonable or constitutional.

## D. The amount of force used in the seizure

■■■ To determine whether the force used to effect a particular seizure is reasonable under the Fourth Amendment, a court must carefully weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A court must consider "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.,* at 397, 109 S.Ct. 1865. "Not every push or shove, even if it may later seems unnecessary in the peace of a judge's chambers, violates the Forth Amendment." *Id.,* at 396, 109 S.Ct. 1865 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir., 1973)). Qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force. *Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "Police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," so the reasonableness of an officer's belief as to the appropriate level of force should be judged from that of an on-scene perspective. *Id.,* at 205, 121 S.Ct. 2151.

Plaintiffs complain that Spafford suffered an injury to her back when she was taken out of the house and put into the police vehicle. They contend that Spafford's "shoe fell off and when she attempted to stop and put it back on, Romanowski shoved her forcefully injuring her back and hip." They argue that there is no evidence that shows the necessity of shoving Spafford.

Neither Deputy Sheriff Romanowski nor any of the other officers who provided deposition testimony observed Spafford stumble or move her body in any manner that would indicate that excessive force was being applied. None of the officers reported hearing Spafford complaining of pain or otherwise indicating that the hand-cuffs were too tight. There is no testimony from anyone, including Spafford herself, that any officer and Spafford engaged in a struggle or contentious physical contact of any kind. The officers contend that Spafford was uncooperative and belligerent during their attempt to secure the premises. Deputy Sheriff Romanowski argues that he reasonably believed that the amount of force he used in handcuffing Spafford and escorting her down the stairs and to the police car was reasonable. He asserts that his actions were particularly reasonable given that weapons were known to exist and were ultimately found on the premises.

Because there is a dispute of fact over the amount of force used, a hearing on this issue will be necessary. My chambers will schedule one forthwith.

### III. Motion to Add Defendants

▮ The only cross-claim discernable in plaintiffs' submission is a request to name John Thompson, Richard Onorati and Paul Arteta as defendants. Plaintiffs' Memorandum of Law, Section 4. Plaintiffs argue that a party that appears by counsel and voluntarily participates in litigation submits to the jurisdiction of the Court and waives any defect in service of process unless affirmatively pled. They cite *Merchants H. & L. Co. v. James B. Clow & Sons*, 204 U.S. 286, 27 S.Ct. 285, 51 L.Ed. 488 (1907) and *Davis v. Davis*, 305 U.S. 32, 39, 59 S.Ct. 3, 83 L.Ed. 26 (1938) in support of this proposition. In *Merchants H. & L. Co.*, however, the defendant chal-

lenged jurisdiction at the same time as it filed a counterclaim; the court held that the defendant had waived his jurisdictional objections by appearing. Similarly, in *Davis*, the challenge to jurisdiction was defeated because the challenging party appeared in the lawsuit, made pleadings, introduced evidence, and generally engaged in the litigation.

This case is not like those: these three individuals have not voluntarily participated in litigation or taken any steps to affirmatively involve themselves in these proceedings. They appeared in depositions only when they were required to by named parties. It is true that they were represented for purposes of those depositions by the same attorney who represents defendant Deputy Sheriff Romanowski and the John Does 7–15 who were employees of the Orange County Sheriff's Office. It is also true that that attorney included the John Doe defendants in affirmative defenses she raised in the Answer she submitted on behalf of Deputy Sheriff Romanowski, submitted papers to the court that identified her as representing "defendants," and, once, sent a letter to the Court in which she identified herself as representing "Romanowski and three (3) other Deputy Sheriffs of the Orange County Sheriff's Office identified as Does 1–14." Letter dated July 7, 2003, docket # 8. Nonetheless, these three individuals have not made a formal answer or appearance in this lawsuit, let alone participated in discovery beyond what was required of them, asserted a counterclaim, or taken any affirmative action. Plaintiffs' motion to add defendants is denied.

### IV. Conclusion

For the reasons stated above, Defendant Deputy Sheriff Romanowski's motion for summary judgment is granted on all issues

except the use of force in the seizure of Spafford.

It is so ordered.