*Accardi v. County of Suffolk*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of January, two thousand twenty-five.

Present:
> GUIDO CALABRESI,
> MICHAEL H. PARK,
> ALISON J. NATHAN,
> *Circuit Judges.*

---

JAMES K. ACCARDI,

> *Plaintiff-Appellant,*

> v.                                                                 24-903

COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, LIEUTENANT ANDREW MANFREDONIA, AND LIEUTENANT SEAN BERAN,

> *Defendants-Appellees.* *

---

FOR PLAINTIFF-APPELLANT:                 RAYMOND NEGRON, Law Office of Raymond
                                          Negron, Mount Sinai, NY.

FOR DEFENDANTS-APPELLEES:                 ANNE CATHERINE LEAHEY, Suffolk County
                                          Department of Law, Hauppauge, NY.

---

\* The Clerk of Court is respectfully directed to amend the caption accordingly.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Gonzalez, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant James Accardi was hospitalized involuntarily for five days in a psychiatric facility after a series of domestic incidents. He sued Defendants Suffolk County, Suffolk County Police Department, Lieutenant Andrew Manfredonia, Lieutenant Sean Beran, and various police officers for violations of his Fourth and Fourteenth Amendment rights, among other claims. Defendants filed a motion for summary judgment, which the district court granted and then entered judgment for Defendants and dismissed the case.

On appeal, Accardi argues the district court erred in dismissing the first count of his four-count complaint because there existed a genuine dispute of material fact about whether Defendant Manfredonia lied to healthcare providers in a way that induced them to keep Accardi hospitalized for treatment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review a district court's decision to grant summary judgment *de novo*, construing the evidence in the light most favorable to the party against which summary judgment was granted and drawing all reasonable inferences in its favor." *Halo v. Yale Health Plan, Dir. of Benefits & Recs. Yale Univ.*, 819 F.3d 42, 47 (2d Cir. 2016) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## I. Legal Framework

### A. New York Mental Hygiene Law

Under New York law, police officers "may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others." N.Y. Mental Hygiene Law § 9.41(a). Officers may also "direct the removal of such person or remove him or her to . . . any comprehensive psychiatric emergency program specified in subdivision (a) of section 9.40 of this article." *Id.* Similarly, officers may take an individual "who appears to be incapacitated by alcohol and/or substances to the degree that there is a likelihood to result in harm to the person or to others . . . to a treatment facility for purposes of receiving emergency services." *Id.* § 22.09(b)(2). New York law defines "likelihood to result in serious harm" as:

> (i) a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself, or (ii) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.

*Id.* § 22.09(a)(3).

### B. Fourteenth Amendment

"An involuntary civil commitment is a massive curtailment of liberty, and it therefore cannot permissibly be accomplished without due process of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995) (cleaned up). More specifically, "[s]ubstantive due process prohibits states from involuntarily committing nondangerous mentally ill individuals." *Bolmer v. Oliveira*, 594 F.3d 134, 142 (2d Cir. 2010). "[T]he New York State civil commitment scheme, considered as a whole and as interpreted . . . to include a showing of dangerousness, meets

minimum due process standards." *Project Release v. Prevost*, 722 F.2d 960, 973–74 (1983); *see also Rodriguez*, 72 F.3d at 1062 ("New York's overall statutory scheme governing involuntary commitments has been held facially sufficient to meet the requirements of due process.").

C. Fourth Amendment

"[T]he Fourth Amendment applies to involuntary commitment." *Glass v. Mayas*, 984 F.2d 55, 58 (2d Cir. 1993). It "requires that an involuntary hospitalization may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard." *Id.* (internal quotation marks omitted). Probable cause is a "complete defense to a constitutional claim of false arrest." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (internal citation omitted).

New York Mental Hygiene Law § 9.41 is "consistent[] with the requirements of the Fourth Amendment and [we] therefore assume that the same objective reasonableness standard is applied to police discretion under this section." *Kerman v. City of New York*, 261 F.3d 229, 240 n.8 (2d Cir. 2001). Thus, a "warrantless seizure for the purpose of involuntary hospitalization may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is dangerous to [him]self or to others." *Singh v. City of New York*, 23-24-cv, 2024 WL 319117, at *3 (2d Cir. Jan. 29, 2024) (internal quotation marks omitted).

D. Misrepresentations in a Probable Cause Determination

An allegation that a deliberate misrepresentation influenced a probable cause determination gives rise to a mixed question of law and fact. To defeat a defendant's motion for summary judgment on such an issue, a plaintiff "must have made an offer of proof supporting specific allegations of deliberate or reckless misrepresentation []; the alleged misrepresentations must be

4

legally relevant to the probable cause determination; and there must be a genuine issue of fact about whether the [decisionmaker] would have [found probable cause] on the basis of corrected [information]." *Velardi v. Walsh*, 40 F.3d 569, 574 (2d Cir. 1994) (internal quotation marks omitted).

## II. Application

Accardi challenges the district court's dismissal of his first cause of action, which alleged that the "false statements Defendants knowingly made to medical personnel at Mather Hospital, Stony Brook Hospital's CPEP, and/or Eastern Long Island Hospital under the color of law constitute a violation of Plaintiff's rights to freedom and due process of law under the Fourth and Fourteenth Amendments of the United States and New York State Constitutions." ECF No. 1 ¶ 63. He argues that the dispute over "whether Manfredonia told healthcare providers that Accardi had barricaded himself in his home and did not surrender until four-hours of negotiating had passed" constituted a genuine dispute of material fact. Appellant's Br. at 8.

Here, the district court properly granted Defendants' motion for summary judgment as to Accardi's first cause of action because there is no genuine dispute that the medical decisionmakers had sufficient correct information to determine that Accardi was "conducting himself . . . in a manner . . . likely to result in serious harm" to himself or others under N.Y. Mental Hygiene Law § 9.41(a). The decision to commit Accardi was based on undisputed evidence, including his history of substance abuse, his wife's sworn statement to the Suffolk County Police Department about his erratic behavior and serious threats of harm, and Mr. Bardak's and Lieutenant Beran's observations of Accardi.

5

Evidence from Accardi's medical records confirms that healthcare providers would have decided to involuntarily commit Accardi even without Manfredonia's alleged statements about a "barricade." For example, Dr. Narayan wrote that Accardi "has multiple risk factors for completing suicide and homicide, and requires inpatient admission at this time." App'x at 427. Dr. Narayan also categorized Accardi's illness as "severe." *Id.* Dr. Bonvino noted that Accardi "initially told nursing staff his last drink was about 8 weeks although utox is positive for alcohol"; that Accardi himself reported "he had an argument with his wife, was throwing things, and made the comment that if she left the house he'd kill himself"; and that Accardi was not compliant with his antidepressant medication. App'x at 427. Dr. Bonvino acknowledged that "there was some mention of pt barricading himself in the home with a 4 hour stand-off" to a "prior attending," but she noted that "this is *not confirmed*." App'x at 428 (emphasis added). Moreover, she did so in an addendum 45 minutes after she made the decision that Accardi "requires inpatient admission at this time." App'x at 858. And, regardless, her notes exhibit the ample alternative grounds on which she made the determination to admit Accardi, observing that he exhibited "poor insight, poor judgment, and due to collateral information from [] various sources including his wife who is very concerned pt may attempt to kill himself – he currently poses a high acute risk to himself and others at this time." *Id.* Accardi failed to introduce any material facts disputing the accuracy of these records.

We thus reject Accardi's argument that the district court erred in dismissing his claim due to a factual dispute about Defendant Manfredonia's statements to healthcare providers.

*　　*　　*

6

We have considered all of Accardi's remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court